# EXHIBIT A

Emily Ward Buzanis, Graves
Circuit Clerk
1102 Paris Road, Suite 21
Mayfield, KY 42066

Case Number: 22-CI-00362



USPS CERTIFIED MAIL

9236 0901 9403 8398 0792 11

Restricted Delivery

JUSTIN BOBBITT
22 RIFLE TRAIL ROAD
HICKORY, KY 42051

Presiding Judge: HON. KEVIN D. BISHOP (652418)



**KCOJ eFiling Cover Sheet**

Case Number: 22-CI-00362
Envelope Number: 5353170
Package Retrieval Number: 535317036255143@00000097263
Service by: Certified Mail
Service Fee:  $ 0.00
Postage Fee: $ 16.00

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.

ackage : 000001 of 000036

This page was intentionally left blank

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice      Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br>**CIVIL SUMMONS** | Case #: **22-CI-00362**<br>Court:  **CIRCUIT**<br>County: **GRAVES** |

*Plantiff,* **ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A**, *Defendant*

TO:  **JUSTIN BOBBITT**

  **22 RIFLE TRAIL ROAD**

  **HICKORY, KY 42051**

The Commonwealth of Kentucky to Defendant:

  You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Emily Ward Buzan's*

Graves Circuit Clerk
Date: **12/8/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

Date: _____, 20_____     _____
                                          Served By

                                        _____
                                          Title

Summons ID: 535317036255143@00000097263
CIRCUIT: 22-CI-00362 Certified Mail
ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A



 

Page 1 of 1

This page was intentionally left blank

COMMONWEALTH OF KENTUCKY
GRAVES CIRCUIT COURT
CIVIL ACTION NO. (TBD)
*ELECTRONICALLY FILED*

DUSTIN ALIFF, ROBERTA BROOKS, **PLAINTIFFS**
JEFF CHISM as personal
representative of the Estate of JILL
MONROE, JEMARYON HART,
MONSERRATE DE LA PAZ LOPEZ
JUSTINIANO as personal
representative of the Estate of IVÁN
RAMIREZ LOPEZ, CHANCE PITTS,
PATRICIA SCOTT as personal
representative of the Estate of KAYLA
MARIE SMITH, KRISTIE WHITE,
MONTEL WIGGINS, DARRYL
YONTS, ELIJAH JOHNSON,
WILLIAM ALIFF, MATTHEW
BARBER, MARY SMITH, HALEY
CONDER, MCKAYLA EMERY,
MATTHEW RILEE VALIANT, and
JOHN LAWSON

v.                              **COMPLAINT**

MAYFIELD CONSUMER
PRODUCTS, LLC; and JUSTIN
BOBBITT                                    **DEFENDANTS**

* * * * * * * * *

Come now the Plaintiffs, by counsel, and for their Complaint against the

Defendants, state as follows:

**PARTIES**

1.    At all times relevant to this action, Plaintiffs or Plaintiffs' decedents

Roberta Brooks, Jill Monroe, Iván Ramirez Lopez, Chance Pitts, Kayla Marie Smith,

Kristie White, and Darryl Yonts were residents of Graves County, Kentucky.



2.      At all times relevant to this action, Plaintiffs Jemaryon Hart and Montel Wiggins were residents of McCracken County, Kentucky.

3.      At all times relevant to this action, Plaintiff Dustin Aliff was a resident of Marshall County, Kentucky.

4.      At all times relevant to this action, Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, and John Lawson were residents of Graves County, Kentucky.

5.      At all times relevant to this action, Plaintiffs William Aliff and Matthew Rilee Valiant were residents of Marshall County, Kentucky.

6.      At all times relevant to this action, Plaintiff Matthew Barber was a resident of Ballard County, Kentucky.

7.      At all times relevant to this action, Defendant Mayfield Consumer Products LLC ("Defendant MCP" or "MCP") was a Kentucky business entity duly licensed and authorized to conduct business in the Commonwealth of Kentucky and was conducting business in Graves County, Kentucky.

8.      At all times relevant to this action, upon information and belief, Defendant Justin Bobbitt ("Defendant Bobbitt") was a resident of Graves County, Kentucky.

9.      At all times relevant to this action, Defendant Bobbitt was an employee, servant, agent, representative, ostensible agent, operator, owner, member, manager, shareholders and/or partner of Defendant MCP.

## JURISDICTION & VENUE

10.     Venue is proper because at the time of the actions or inactions giving rise

to the causes of action stated herein, the Defendant was located in Graves County,

Kentucky, and/or the injuries to and/or death of Plaintiffs occurred there.

**PROCEDURAL HISTORY**

11.     On March 3, 2022, Plaintiffs Elijah Johnson, William Aliff, Matthew Barber,

Mary Smith, Haley Conder, McKayla Emery, Matthew Valiant and John Lawson filed

their Verified Class Action Civil Complaint in Graves Circuit Court, *Johnson v. Mayfield*

*Consumer Products, LLC*, 22-CI-00040.

12.     On March 25, 2022, Defendant MCP filed a Notice of Removal removing

the case to the United States District Court for the Western District of Kentucky.

*Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, DE #: 1 (W.D. Ky.).

13.     On May 18, 2022, Plaintiffs Johnson, William Aliff, Barber, Smith, Conder,

Emery, Valiant and Lawson filed a Motion for Leave to Amend Complaint seeking to add

Defendant Bobbitt as a party Defendant. *Johnson v. Mayfield Consumer Products, LLC*,

5:22-cv-44-BJB, DE #: 14 (W.D. Ky.).

14.     As of the date of this filing, the federal court has issued no ruling on the

motion. Therefore, out of an abundance of caution that the federal court may deny their

motion to add Defendant Bobbitt as a party Defendant, Plaintiffs Johnson, William Aliff,

Barber, Smith, Conder, Emery, Valiant and Lawson bring claims in this Complaint

against Defendant Bobbitt only.

15.     Neither *Johnson v. Mayfield Consumer Products, LLC*, 22-CI-00040 (Graves Cir.

Ct.), nor *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, (W.D. Ky.) lists

Plaintiffs DUSTIN ALIFF, ROBERTA BROOKS, JEFF CHISM as personal



representative of the Estate of JILL MONROE, JEMARYON HART, MONSERRATE DE LA PAZ LOPEZ JUSTINIANO, as personal representative of the Estate of IVÁN RAMIREZ LOPEZ, CHANCE PITTS, PATRICIA SCOTT as personal representative of the Estate of KAYLA MARIE SMITH, KRISTIE WHITE, MONTEL WIGGINS, and DARRYL YONTS individually.

16.    Thus, Plaintiffs DUSTIN ALIFF, ROBERTA BROOKS, JEFF CHISM as personal representative of the Estate of JILL MONROE, JEMARYON HART, MONSERRATE DE LA PAZ LOPEZ JUSTINIANO, as personal representative of the Estate of IVÁN RAMIREZ LOPEZ, CHANCE PITTS, PATRICIA SCOTT as personal representative of the Estate of KAYLA MARIE SMITH, KRISTIE WHITE, MONTEL WIGGINS, and DARRYL YONTS bring their claims in this Complaint against both named Defendants.

## **FACTS**

17.    MCP is a 500-employee company including assembly-line laborers employed directly by it and through temporary staffing agencies in the Jackson Purchase region of western Kentucky.

18.    Operating several manufactories in the region, MCP produces scented candles for upscale retailers whom the company supplies through mass distribution channels.

19.    The company's factory at 112 Industrial Drive, Mayfield, Kentucky, 42066 was a 24-hour operation that produced candles for retailers, including Bath & Body Works.

20.    MCP operates a plant in Hickory, Kentucky, which is about six miles north of Mayfield in Graves County.

21.    MCP had a history of workplace safety violations in recent years, having been cited by the Kentucky Department of Workplace Standards, Division of Occupational Safety and Health, for serious transgressions as recently as 2019.

22.    In September 2019 alone, that state division issued seven violations of safety standards coded as "serious," resulting in fines.

23.    By December 2021, MCP had been ramping up production to meet holiday demand, and employees were working 10 to 12-hour shifts with required Saturdays for incentive and/or overtime pay.

24.    During this season, MCP employees were working 10-hour shifts five days per week.

25.    In the incentive- and overtime-pay scheme operated by MCP required employees to work at least every other Saturday in order for employees to obtain compensation beyond Plaintiffs' standard base pay of $8/hour, once they had worked 50 hours in a given week. Therefore, terminating Plaintiffs during a Friday night shift at holiday time, after they had put in upwards of 50 hours already worked, would have effected a devastating financial blow, absent the Saturday shift numerous Plaintiffs intended to work on Saturday, December 11, 2021.

26.    On Friday, December 10, 2021, MCP required Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, Matthew Barber, William Aliff, Matthew Rilee Valiant, John Lawson and 102 similarly situated employees to continue to work at its place of business even though it knew or should have known about the expected

tornado and the danger of serious bodily injuries and death to its employees and others at its place of business, if its employees and others were required to remain at its place of business during the pendency of the expected tornado.

27.     MCP had up to three and one-half hours before the tornado struck its place of business to allow its employees and others to leave its worksite as a safety precaution.

28.     MCP refused to allow Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, Matthew Barber, William Aliff, Matthew Rilee Valiant, John Lawson and other similarly situated employees to leave work before the tornado actually struck its place of business even though it had at least three hours of notice of the danger this tornado posed to its place of business and to its employees.

29.     MCP repeatedly threatened to terminate the employment of any employee who left because of the expected tornado in the hours before the tornado actually struck its place of business.

30.     One media report by Bruce Schreiner, published on December 15, 2021, at 6:37 a.m. ET, states the following:

> MAYFIELD, Ky. (AP) — An employee of the Kentucky candle factory where eight workers were killed by a tornado said Tuesday that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching.
>
> Haley Conder, who worked at the Mayfield Consumer Products factory on and off for 10 years, also questioned why the company did not encourage workers to go home — or at least give them a better understanding of the danger — between a first tornado siren around 6 p.m. Friday and another one around 9 p.m., shortly before the tornado struck.
>
> "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the

worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

… More than 100 people were working on holiday candle orders when the twister leveled the facility. The scale of the damage initially stoked fears that scores of workers could be found dead in the rubble.

31.    Another media report by Eileen Street, published at 3:43 p.m. ET on

December 14, 2021, states the following:

LOUISVILLE, Ky. — Last Friday, Dec. 10, 110 employees were working at Mayfield Consumer Products, the candle factory in Mayfield destroyed by a tornado. A volunteer spokesperson for Mayfield consumer products told Spectrum News 1 on Tuesday that out of the 110 people at the factory Friday night, eight are confirmed dead and the rest have been accounted for…. Jamie Brien also worked that night. The floor supervisor at Mayfield Consumer Products told Spectrum News 1 he called the production manager Thursday night.

"And asked him you, you know, 'How was we going to deal with the storm?' That it was supposed to be pretty bad, you know, the following night," Brien said. "And he just said, 'We would deal with it as it unfolded,' and that's what we did." … "When the alarm went off the second time, yes, that's when I thought, 'Man, we should've probably sent everybody home,'" Brien said. "You know, 'Here we go again,' and the storm is intensified from, you know, 5:30 [p.m. CST] when the other alarm had went off…. Parsons-Perez didn't think twice about going to work Friday. The Chicago native said she is used to severe weather.

Reflecting back on Friday, Parsons-Perez said she believed that her immediate supervisor did everything he should have to protect her and her co-workers. However, she wasn't sure about the decisions made by those above her supervisor.

"Whoever his boss is probably should have said, 'We probably don't need to make those candles today. Maybe we should wait.' But they didn't," Parsons-Perez said.

32.    Another media report by Deon J. Hampton, published on December 13,

2021, at 3:57 p.m. ET and updated on December 14, 2021 at 7:49 a.m. ET, states the

following:

MAYFIELD, Ky. — As a catastrophic tornado approached this city Friday, employees of a candle factory — which would later be destroyed — heard the



warning sirens and wanted to leave the building. But at least five workers said supervisors warned employees that they would be fired if they left their shifts early.

For hours, as word of the coming storm spread, as many as 15 workers beseeched managers to let them take shelter at their own homes, only to have their requests rebuffed, the workers said."

"Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said."

"If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

… About 15 people asked to go home during the night shift shortly after the first emergency alarm sounded outside the facility, said another employee, Haley Conder. There was a three- to four-hour window between the first and second emergency alarms when workers should have been allowed to go home, she said.

…Elijah Johnson, 20, was working in the back of the building when several employees wanting to head home walked in to speak with supervisors. He joined in on the request.

"I asked to leave and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked.

"Yes," a manager responded, Johnson told NBC News.

Johnson said managers went so far as to take a roll call in hopes of finding out who had left work.

33.    Mary Smith requested to leave work and was told by two supervisors, "Lorenzo" and Defendant Bobbitt, that she could not leave and that if she did leave, she would be terminated. Also, she witnessed Defendant Bobbitt tell multiple other employees that if they were to leave, they would be terminated. She witnessed Defendant Bobbitt tell Elijah Johnson that Mr. Johnson could not leave and if Mr. Johnson were to leave, he would be terminated. She witnessed Defendant Bobbitt

calling roll to ascertain whether any employees had left work so as to enforce MCP's earlier threat to terminate anyone who left work.

34.    Haley Conder asked to leave and was told by a supervisor that she could not leave. She had been informed that MCP's Human Resources officer on duty that night was going to terminate the employment of people who left.

35.    McKayla Emery said in an interview from her hospital bed that workers first asked to leave shortly after tornado sirens sounded outside the factory around 5:30 p.m. They were told by supervisors that they could not leave.

36.    Employees at the Hickory Point plant owned by MCP were directed NOT to come to work by MCP the afternoon of December 10, 2021, due to the weather. When MCP employees at the 112 Industrial Drive plant asked to leave to go home in her presence, though, Ms. Emery witnessed Defendant Bobbitt, the main overnight supervisor, say: **"You more than likely will lose your job."**

37.    Matthew Barber requested to leave work and was told by two supervisors, "Lorenzo" and Defendant Bobbitt, that he could not leave and if he were to leave  that he would be terminated. Also, Mr. Barber witnessed Defendant Bobbitt telling employees that if they were to leave, then they would be terminated. Mr. Barber witnessed Defendant Bobbitt tell Elijah Johnson that Mr. Johnson could not leave and if Mr. Johnson were to leave, he would be terminated.

38.    Dustin Aliff requested to leave work and was told by a supervisor that he would be terminated.

39.    William Aliff requested to leave work and was told by a supervisor that he would be terminated.

40.     Matthew Rilee Valiant requested to leave work and was told by Lorenzo, his supervisor, that if he left, he would be terminated. He also witnessed Lorenzo stating in general that if anybody left, they would be terminated on the spot.

41.     John Lawson had just relocated to Mayfield from Reno, Nevada, in order to be closer to his grandchildren. He had worked at the factory in quality control for one week prior to December 10, 2021. After supervisors barred employees from leaving, he voiced concerns that workers should be allowed to leave and noted that if this severe weather event were forecast in Nevada, the company would have shut down simply to avoid liability in the event of a mass casualty event. In response, female supervisor Jennifer J. laughed and said, "Welcome to Kentucky." According to GPS on a device belonging to Mr. Lawson, he still would have had 13 minutes after her comment to get clear of the path of the tornado and before the factory was twisted and smashed with all 110 employees on duty affected. The destruction caused by the tornado buried Mr. Lawson in rubble. It took three to four hours for emergency personnel and others to dig him out as he lay adjacent to a deceased victim.

### MCP Commences a False-Light Cover-up Scheme

42.     Elijah Johnson stated in an NBC interview (which was reported by Deon J. Hampton as published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021) that he had been working in the back of the building when several employees wanting to go home walked in to speak with supervisors. He joined in on the request. "I asked to leave, and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked. "Yes," a manager responded,

Johnson told NBC News. Johnson said managers went so far as to take a roll call in hopes of finding out who had left work, so that they could terminate them as promised.

43.    Haley Conder gave a telephonic interview to the Associated Press (which is reported by Bruce Schreiner as published on December 15, 2021, at 6:37 a.m. ET) and stated therein that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching. "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

44.    McKayla Emery stated in an interview (which is in the report by Deon J. Hampton published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021), "Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said." "If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

45.    Robert (Bob) Ferguson, a former partner at global public-relations behemoth Fleishman-Hillard who is the CEO and a founder of The Hawksbill Group, a business and communications consulting firm based in Washington, D.C. (hereinafter referred to as "Ferguson"), was deployed by MCP as its engaged spokesperson in the aftermath of the tornado and the damage caused by said tornado. In his capacity as an authorized agent of MCP, Ferguson placed the character of Elijah Johnson, Haley Conder, and McKayla Emery in a false light



during interviews he gave to various news organizations that were published to the public.

46.     The article, titled "Ky. Candle Workers Sue Factory, Claiming They Couldn't Leave Before Deadly Tornado Employees are seeking compensation, punitive damages and legal fees" by Natasha Dado published December 17, 2021 03:10 PM, states in relevant parts the following: "Similarly, NBC News reported that at least five workers claimed supervisors told workers they would be terminated if they left the workplace early. Mayfield Consumer Products spokesman Bob Ferguson — who did not immediately return PEOPLE's request for comment about the suit — told NBC News that the allegations in its story were 'absolutely untrue.' 'We've had a policy in place since Covid began. Employees can leave any time they want to leave and they can come back the next day,' the spokesperson added."

47.     Also, the article titled "Mayfield candle factory tornado survivors sue company, allege 'flagrant indifference'" by Ben Tobin of the Louisville Courier-Journal, published at 7:02 a.m. ET on Dec. 16, 2021, and updated at 12:13 p.m. ET on Dec. 17, 2021, states in relevant parts the following:

> Ferguson has repeatedly denied claims about Mayfield Consumer Products threatening employees and refusing to let them leave, calling them "incredibly false." "Employees can go home at any time without any penalty," Ferguson previously told The Courier Journal. "Since COVID has made it so difficult to find employees, we have mended our practices. If someone comes to work, and three hours into the shift, they say 'I want to go home,' they're free to go home without penalties, and they can come back to work the next day and start."

48.     The article titled "Attorney claims 'smoking gun' as Mayfield factory workers consider lawsuit" by Jared Bennett of the Kentucky Center for Investigative Reporting published on Dec. 15, 2021, in relevant parts states: "Bob Ferguson of the

Hawksbill Group, the Washington D.C. based public relations firm representing the company, said earlier this week that any reports that employees weren't free to leave was 'baloney.' Reached by phone Tuesday, Ferguson said he stands by that statement."

### *MCP Defames its Honest Employees' Character using the Mass Media*

49.     Elijah Johnson stated in the NBC interview (which is reported in the media report by Deon J. Hampton, published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021) that he was working in the back of the building when several employees wanting to go home walked in to speak with supervisors. He joined in on the request. "I asked to leave and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked. "Yes," a manager responded, Johnson told NBC News. Johnson said managers went so far as to take a roll call in hopes of finding out who had left work, so that they could terminate them.

50.     Haley Conder spoke directly with the Associated Press (which is reported by Bruce Schreiner, published on December 15, 2021, at 6:37 a.m. ET) and stated therein that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching, according to the Schreiner report: "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

51.     McKayla Emery stated in an interview (which is reported in the televised and printed NBC report by Deon J. Hampton, published on December 13, 2021, at 3:57



p.m. EST and updated on December 14, 2021), "Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said." "If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

52.       Ferguson, engaged by MCP to be its spokesperson and in his capacity as an authorized agent of MCP, defamed the character of Elijah Johnson, Haley Conder, and McKayla Emery during interviews he gave to various news organizations that were published to the public.

53.       The *People Magazine* article titled "Ky. Candle Workers Sue Factory, Claiming They Couldn't Leave Before Deadly Tornado Employees are seeking compensation, punitive damages and legal fees" by Natasha Dado, published December 17, 2021, at 3:10 PM, states in relevant parts the following: "Similarly, NBC News reported that at least five workers claimed supervisors told workers they would be terminated if they left the workplace early. Mayfield Consumer Products spokesman Bob Ferguson — who did not immediately return PEOPLE's request for comment about the suit — told NBC News that the allegations in its story were "absolutely untrue." "We've had a policy in place since Covid began. Employees can leave any time they want to leave and they can come back the next day," the spokesperson added."

54.       Also, the article titled "Mayfield candle factory tornado survivors sue company, allege 'flagrant indifference'" by Ben Tobin of the Louisville Courier Journal, as published at 7:02 a.m. ET Dec. 16, 2021, and updated at 12:13 p.m. ET Dec. 17, 2021, states in relevant parts the following:

> Ferguson has repeatedly denied claims about Mayfield Consumer Products threatening employees and refusing to let them leave, calling them "incredibly

false." "Employees can go home at any time without any penalty," Ferguson previously told The Courier Journal. "Since COVID has made it so difficult to find employees, we have mended our practices. If someone comes to work, and three hours into the shift, they say 'I want to go home,' they're free to go home without penalties, and they can come back to work the next day and start."

55.     The article titled "Attorney claims 'smoking gun' as Mayfield factory workers consider lawsuit" by Jared Bennett of the Kentucky Center for Investigative Reporting published on Dec. 15, 2021, in relevant parts states the following: "Bob Ferguson of the Hawksbill Group, the Washington D.C. based public relations firm representing the company, said earlier this week that any reports that employees weren't free to leave was 'baloney.' Reached by phone Tuesday, Ferguson said he stands by that statement."

### *MCP Refuses to Correct False Statements and Continues Global Onslaught*

56.     Still recovering from the injuries arising from having been trapped under tornado rubble at his workplace, Plaintiff Johnson grew appalled by the words and actions attributed to his employer through its agent, the D.C.-based Ferguson, in global media outlets.

57.     Mr. Johnson sought counsel in Washington, D.C. to address Ferguson and subsequently retained counsel in Kentucky to resolve the false statements.

58.     On December 15, 2021, The Courier-Journal's Ben Tobin reported on the mortifying impasse caused by Defendant MCP:

> The only client [Counsel to Johnson] Jones identified is 20-year-old Elijah Johnson. The others, he said, "are not being identified by name because of real-time reprisals that already have begun."
>
> Jones said he has sent Mayfield Consumer Products, its CEO Troy Propes and its spokesperson Bob Ferguson a "cease-and-desist" to stop claiming that candle factory employees could have left at any point and that their jobs were not threatened for leaving before the tornado demolished the factory.



Jones said he was giving the company until 5 p.m. Wednesday to comply and retract its statements. He provided an email to The Courier Journal sent to info@hawksbillgroup.com — the email address for The Hawksbill Group, a consulting firm for which Ferguson is CEO — that was sent at 11:50 p.m. Tuesday.

Jones said he tried to call Ferguson on Wednesday morning.

Ferguson told The Courier Journal on Wednesday morning the company has not received a cease-and-desist request or any notice of pending litigation. Asked if he stands by his earlier comments to The Courier Journal that employees' claims of being threatened over leaving the candle factory were "incredibly false," he said "of course."

59.     Thus, MCP refused to retract its false and defamatory statements when given the opportunity to do so prior to institution of legal proceedings.

### Sued in Court, MCP Temporarily Ceases Defamation

60.     After the 5 p.m. December 15 deadline passed amid the reported intransigence by MCP, and with no direct acknowledgement of Mr. Johnson's demand by it, Mr. Johnson filed suit around 7:30 p.m. Central Daylight Time on Wednesday December 15, 2021.

61.     On December 16, 2021, after being notified of the lawsuit, MCP temporarily re-directed its media narrative — from attacking its employees who had told the truth to spinning the supervisors' trapping of MCP's employees as a "heroic" sheltering effort.

62.     Louisville news outlet 89.3 WFPL reported from the Kentucky Center for Investigative Reporting that day as follows:

An employee of the Mayfield candle factory who survived the building's collapse during last week's tornado has filed a lawsuit claiming the company did not adequately protect them during the storm.

Eight people died when the storm hit; there were 110 people inside the building.

The lawsuit was filed in Graves Circuit Court on behalf of Elijah Johnson and other "similarly situated" employees of Mayfield Consumer Products. The suit claims the company refused to let its employees leave the factory Friday night, even though the factory had "at least 3 hours' notice of the danger" the severe weather could bring.

[...] Bob Ferguson, a spokesperson for Mayfield Consumer Products, could not be immediately reached for comment. Ferguson said this week that employees were free to leave without retribution.

Amos Jones, a Washington, D.C. based attorney working with [Kentucky counsel of record William] Davis on the case, said they decided to file the lawsuit after the company retained a public relations firm to deny the claims of surviving employees.

"It's not even spin, it's a cover up," Jones said Thursday. Jones issued a press release this week claiming a "smoking gun": he later told KyCIR that an employee had a recording backing up the claims they faced firing if they left. But there are no details about the evidence or allegations in the lawsuit beyond those cited in news stories.

[...] On Tuesday, Mayfield Consumer Products CEO Troy Propes announced in a statement that the company had hired experts to investigate how managers handled the storm.

"We're confident that our team leaders acted entirely appropriately and were, in fact, heroic in their efforts to shelter our employees," the statement said.

### *MCP Falsely Tells NBC that Johnson was Never at Work during Tornado*

63.      On or about Friday, December 17, NBC News reporter Deon J. Hampton, who had published widely over the week on Mr. Johnson's account of this harrowing ordeal inside MCP's workplace before, during, and after the tornado, telephoned Mr. Johnson and invited him to "come clean" if what MCP had just told him were true.

64.      Mr. Johnson replied, "What did MCP say?"

65.      Mr. Hampton informed Mr. Johnson that NBC had just been threatened with a defamation lawsuit against it by MCP. MCP's purported basis for this claim was NBC's reporting of anything Mr. Johnson had said about the tornado at the MCP candle



factory because, according to MCP in its grievance conveyed to Hampton and his superiors in the storied news organization, Mr. Johnson had never been at work at MCP's factory on the night the high-end EF4 tornado struck and destroyed the building, and (as *in fact known by MCP when it attacked NBC*) had trapped Mr. Johnson under its rubble for hours, and causing Mr. Johnson's need to be transported to and treated in the hospital well into the morning of Saturday December 11, 2021.

66.     MCP sought to decapitate this action hours after it was filed by going after, but as stated *supra* in the December 15 Courier-Journal publication: "[t]he only client Jones identified[, was] 20-year-old Elijah Johnson. The others, he said, 'are not being identified by name because of real-time reprisals that already have begun.'"

67.     MCP's defamatory, false-light offensive failed, as numerous other in-good-standing employees of it who had witnessed Mr. Johnson's plea in real time prior to the tornado (and/or who themselves had reported the same warning from some of the same managers) immediately came forward to contact and to retain the counsel seeking remedies in this action.

68.     Upon information and belief, MCP as late as Tuesday December 21, 2021 – Christmas Week, and with a state investigation into its safety practices announced as under way by Kentucky Governor Andy Beshear — had gone back to its slash-and-burn-employees/survivors public misconduct, according to the insurance trade publication *NU Property Casualty 360*, which reported at 4 a.m. that day under the headline "Candle factory hit by tornado facing workplace hazards lawsuit/The employees allege the company required them to stay at work or face discipline, despite warnings that dangerous weather was approaching:" "Mayfield Consumer Products

spokesman Bob Ferguson, who works for a public relations firm, denied that employees

were stuck at the plant or faced" discipline.

> ***MCP did not train these named plaintiffs in emergency safety protocols and only had one hallway, one men's restroom, and one women's restroom for its 110 employees to shelter in during the tornado and no indoor emergency alarm system.***

69.    Ferguson, engaged by MCP to be its spokesperson and in his

capacity as an authorized agent of MCP, told the Associated Press in a

published report the following: "Many of the employees were gathered in the tornado

shelter and after the storm was over they left the plant and went to their homes."

70.    MCP did not train these named plaintiffs in emergency safety protocols

and only had one hallway, one men's restroom and one women's restroom for its 110

employees to shelter in during the tornado.

71.    Mark Saxton, 37, who worked at the facility as a forklift operator, said the

following in an NBC news interview: "The first warning came, and they just had us go in

the hallway. After the warning, they had us go back to work," he said to NBC. "They

never offered us to go home."

72.    Haley Conder in an NBC news interview said the following:

After the first siren sounded, she said that workers were kept in the facility's hallways and bathrooms because shift leaders allegedly said the employees were required to stay due to safety procedures....When the second tornado siren went off at around 9 p.m. local time, Conder said she and a group of coworkers asked to leave, but were told by managers, "you can't leave" and "you have to stay here." She added, "The situation was bad. Everyone was uncomfortable."

73.    Also, Conder had worked for MCP for one and half years before the

tornado demolished its factory. In that time, she was never trained on safety protocols

by MCP other than being told to go to the restroom during her orientation which only



included a walk through the hallway leading to the restrooms and instruction to go there.

74.     McKayla Emery had previously been employed by MCP off and on since 2018. She recently was employed by MCP from May 2021 to October 2021 and from November 2021 to December 2021 and was working there at the time the tornado hit MCP's factory. Her orientations by MCP did not include any training on emergency safety protocols other than telling her to go to the restrooms and the hallway.

75.     Matthew Rilee Valiant worked for MCP two and one-half months and was working at MCP's factory when the tornado demolished it. In that time, he was never trained on any safety protocols.

76.     William Aliff, Dustin Aliff, Matthew Barber and Mary Smith were working at MCP's factory when the tornado demolished it. Prior to the tornado demolishing said factory, they never received any training on any safety protocols by MCP.

77.     Elijah Johnson was working at MCP's factory when the tornado demolished the factory while he and 109 employees were actually inside the factory. His orientation by MCP in the nine months that he was working there before the tornado demolished the factory did not include any training on emergency safety protocols other than telling him to go to the restrooms and the hallway.

78.     In addition, MCP's factory did not have any emergency alarm inside the building. The only emergency alarm that was relied upon by MCP's supervisors on the day of the tornado was the public emergency alarm that was going off outside of the factory.

79.     On June 6, 2022, after interviews with numerous current and former employees including nearly all of the class representatives in the Graves Circuit Court action, the Commonwealth of Kentucky Labor Cabinet (operating pursuant to the powers delegated by the federal Occupational Safety and Health Administration (OSHA)) issued seven violations – some marked "serious" – plus $40,000 in fines for safety deficiencies in its "Citation and Notification of Penalty" against Defendant MCP. The agency found MCP to have been seriously deficient in emergency readiness, fitness, and response at the candle factory at the time of the tornado deaths. The Citation set out abatement deadlines; MCP is challenging the findings.

80.     On March 22, 2022, MCP had sued its demolished factory-site landlord in federal court in Paducah through the case captioned MAYFIELD CONSUMER PRODUCTS, LLC, v. UB (MVP-MAYFIELD) LLC, Defendant, and MVP Group International, Inc., Interested Party (Case No. 5:22-cv-00046-BJB), in which MCP reported insurance limits of $40,000,000 on its there-relevant policy, of which $15,000,000 appeared to have been allocated for MCP's successful rebuilding effort that attracted positive attention, including plaudits at a press conference held by Governor Andy Beshear amid MCP's reopening and expansion. Court records show that as of July 20, 2022, that case is in mediation.

81.     Meanwhile, led by Johnson, a group of survivors came forward on November 18, 2022, with a formal filing at the National Labor Relations Board (NLRB) alleging to federal enforcers that MCP retaliated against them for their participation in the OSHA investigation – retaliation allegedly including MCP's refusal to pay medical bills, MCP's insurer's cutting participating ex-employees' workers' compensation



benefits, and the resulting torment of an onslaught of collection activity against survivors by an Evansville, Indiana-based collection agency demanding thousands from numerous former workers who had participated in safety investigations after the factory collapsed on them.

82.      The very next day, on November 19, 2022 – nearing the one-year anniversary of the tornado, MCP deployed another Bob Ferguson-like agent to attack uncompensated, injured former employees – but this one changed the Defendant's story entirely.

83.      Responding to the filing that day of the National Labor Relations Board complaint on behalf of twenty MCP survivors, Attorney Edmund Sauer of Defendant MCP's Bradley law firm, issued a "Statement to the Media" quoted and posted by western Kentucky's National Public Radio affiliate based at Murray State University, WKMS-FM.

84.      Responding to the filing the previous day of a National Labor Relations Board complaint on behalf of twenty MCP survivors, MCP, through Sauer, was quoted in the article headlined "Mayfield candle factory destroyed by tornado facing retaliation charge from former employees" and dated November 22, 2022.

85.      A statement from MCP's legal counsel Edmund Sauer resolutely denied the allegations in the charge, WKMS reported.

86.      In the MCP statement the station supplied as a PDF available by link to the public, Edmund Sauer (1) **_admitted_** that MCP workers were ordered not to leave that night, (2) attributed the decisions to company policy, and (3) cited "federal and state

law" as requiring what he called the "shelter in place" policy MCP now abruptly and

contradictorily claims it was carrying out.

      87.    Sauer averred:

> Elijah Johnson, according to MCP's time records, clocked in on
> the night of the tornado [more than two hours before the tornado
> hit and many hours after MCP had ordered its other factory
> closed] approximately 15 minutes before the tornado warning
> activated and MCP's shelter in place policy went into effect.
> MCP's investigation indicates that Mr. Johnson confirmed to
> another employee that he was told not to leave AFTER MCP's
> shelter in place policy was activated. This [] confirms that MCP
> complied with federal and state law, which requires employers
> to ensure that employees shelter in place during hazardous
> weather events. Anyone who has seen the cars on MCP's roof
> following the tornado can only imagine how many people would
> have died if MCP's brave supervisors on duty that night had not
> complied with the law.

      88.    The published Sauer MCP "Statement to the Media" of November 19,

2022, clarifies the long-running cover-up MCP orchestrated in December 2021 that only

has unraveled in public view over the 11 months since that effort began collapsing out

of the gate, by which Defendant MCP has continually sought to discredit a chief witness

who organized workers to mobilize for truth, including to avenge the wrongful deaths of

their colleagues.

      89.    The attack on Elijah Johnson and internally contradictory statements by

Defendants through their agents evidences a pattern of public deception sustained now

for twelve months, on the eve of the one-year anniversary of the horrific injuries

Defendants caused.

***Public confusion orchestrated by MCP and vicious denials of workers'
compensation benefits alters deliberative domain for Personal Representatives
of the deceased Plaintiffs***



90.     In the case of Kayla Marie Smith, the Personal Representative's or estate's continual communications and interactions with MCP and/or its workers' compensation insurance carrier representatives led Ms. Smith's Personal Representative to believe that $90,000 was the only option and full amount available for financial recovery for her loss of life.

91.     MCP stated this assertion, through its agents/insurance adjusters and/or other persons, in repeated communications about the payment between the date of the death and the payment itself months later.

92.     Even the final payment documents implied that the most that could be paid under the law was just $90,000. Under duress from the loss and seeing the serious legal conflicts and assault by MCP on the characters of former MCP employees in the media, the personal representative gave in and received the $90,000, concluding only after months of reflection and learning of serious OSHA violations that $90,000 was woefully insufficient for the loss of a young, vibrant life in the family.

93.     In the case of Iván Ramirez, the Personal Representative's or estate's continual communications and interactions with MCP and/or its workers' compensation insurance carrier representatives led Mr. Ramirez's Personal Representative to believe that $90,000 was the only option and full amount available for financial recovery for his loss of life.

94.     MCP stated this assertion, through its agents/insurance adjusters and/or other persons, in repeated communications about the payment between the date of the death and the payment itself months later.

95.     Upon information and belief, MCP at first had concealed the death of Mr. Ramirez for an entire week. It was through a family investigation that the estate found his body in the morgue, and it had been transferred to Madisonville, Kentucky.

96.     MCP only then shipped the body to the family in Puerto Rico through Byrn Funeral Home.

97.     Even the final payment documents implied that the most that could be paid under the law was just $90,000. Under duress from the loss and seeing the serious legal conflicts and assault by MCP on the characters of former MCP employees in the media, the personal representative gave in and received the $90,000, concluding only after months of reflection and learning of serious OSHA violations that $90,000 was woefully insufficient for the loss of a young, vibrant life in the family.

98.     Later, the estate of Mr. Ramirez was faced with greed and opportunism as Defendant MCP, hewing to the strict $90,000-limit motif, later sought to recover $10,000 in funeral expenses Defendant MCP had contributed voluntarily as a good-will gesture: An oral communication through MCP manager Luz Cuevas to Ivelisse Ramirez Lopez presented the attempted corporate 180, though the estate did not pay MCP the workers' compensation. MCP had been cooperative in turning over the body to the family in Puerto Rico for Christian services and burial, but that cooperation took a dark turn that eventually caused the estate to hire counsel to protect the interests of the estate.

99.     In the case of Jill Monroe, the Personal Representative's or estate's continual communications and interactions with MCP and/or its workers' compensation insurance carrier representatives led Ms. Monroe's Personal Representative to believe



that $90,000 was the only option and full amount available for financial recovery for her loss of life.

100.    MCP stated this assertion, through its agents/insurance adjusters and/or other persons, in repeated communications about the payment between the date of the death and the payment itself months later.

101.    Even the final payment documents implied that the most that could be paid under the law was just $90,000. Under duress from the loss and seeing the serious legal conflicts and assault by MCP on the characters of former MCP employees in the media, the personal representative gave in and received the $90,000, concluding only after months of reflection and learning of serious OSHA violations that $90,000 was woefully insufficient for the loss of a young, vibrant life in the family.

### COUNT I – FALSE IMPRISONMENT (ALL PLAINTIFFS)

102.    Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson bring claims in this Count against Defendant Bobbitt only.

103.    Plaintiffs DUSTIN ALIFF, ROBERTA BROOKS, JEFF CHISM as personal representative of the Estate of JILL MONROE, JEMARYON HART, MONSERRATE DE LA PAZ LOPEZ JUSTINIANO as personal representative of the Estate of IVÁN RAMIREZ LOPEZ, CHANCE PITTS, PATRICIA SCOTT as personal representative of the Estate of KAYLA MARIE SMITH, KRISTIE WHITE, MONTEL WIGGINS, and DARRYL YONTS bring claims in this Count against both named Defendants.

104.    On or about December 10, 2021, Defendant MCP, by and through its agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, falsely imprisoned Plaintiffs.

Filed        22-CI-00362      12/08/2022      Emily Ward Buzanis, Graves Circuit Clerk

105.    On or about December 10, 2021, Defendant Bobbitt, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, falsely imprisoned Plaintiffs.

106.    As a direct and proximate result of Defendants' false imprisonment, Plaintiffs suffered physical, mental and/or emotional injuries, death and/or loss of consortium.

107.    If not falsely imprisoned, Plaintiffs would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

108.    As a result of Defendants' actions, Plaintiffs have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, destruction of the power to labor and earn money, funeral expenses, loss of consortium, increased risk of future injury and increased insurance premiums.

109.    The actions, inactions, failures and omissions of Defendants as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs and others.

110.    This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL PLAINTIFFS)

111.    Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant



and Lawson bring claims in this Count against Defendant Bobbitt only.

112.   Plaintiffs DUSTIN ALIFF, ROBERTA BROOKS, JEFF CHISM as personal representative of the Estate of JILL MONROE, JEMARYON HART, MONSERRATE DE LA PAZ LOPEZ JUSTINIANO as personal representative of the Estate of IVÁN RAMIREZ LOPEZ, CHANCE PITTS, PATRICIA SCOTT as personal representative of the Estate of KAYLA MARIE SMITH, KRISTIE WHITE, MONTEL WIGGINS, and DARRYL YONTS bring claims in this Count against both named Defendants.

113.   On or about December 10, 2021, Defendant MCP, by and through its agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality.

114.   On or about December 10, 2021, Defendant Bobbitt, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality.

115.   Defendants, by and through their agents, representatives, employees, servants, ostensible agents, representatives, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, engaged in the conduct intentionally or recklessly.

116.   As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical, mental and/or emotional injuries and/or loss of consortium.

117.   If Defendants had not engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality, Plaintiffs would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

118.   As a result of Defendants' actions, Plaintiffs have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, loss of consortium, increased risk of future injury and increased insurance premiums.

119.   The actions, inactions, failures and omissions of Defendants as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs and others.

120.   This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

### COUNT III – STATUTORY VIOLATION (ALL PLAINTIFFS)

121.   Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson bring claims in this Count against Defendant Bobbitt only.

122.   Plaintiffs DUSTIN ALIFF, ROBERTA BROOKS, JEFF CHISM as personal representative of the Estate of JILL MONROE, JEMARYON HART, MONSERRATE DE LA PAZ LOPEZ JUSTINIANO as personal representative of the Estate of IVÁN RAMIREZ LOPEZ, CHANCE PITTS, PATRICIA SCOTT as personal representative of the Estate of KAYLA MARIE SMITH, KRISTIE WHITE, MONTEL WIGGINS, and DARRYL YONTS bring claims in this Count against both named Defendants.



123.   Kentucky statutory law provides that "[a] person is guilty of unlawful imprisonment in the first degree when he knowingly and unlawfully restrains another person under the circumstances which expose that person to a risk of serious physical injury." KRS 509.020(1).

124.   Kentucky statutory law provides that "[a] person is guilty of unlawful imprisonment in the second degree when he knowingly and unlawfully restrains another person." KRS 509.030(1).

125.   Kentucky statutory law provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation. . . ." KRS 446.070.

126.   On or about December 10, 2021, Defendant MCP, by and through its agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, violated one or more Kentucky statutes or regulations.

127.   On or about December 10, 2021, Defendant Bobbitt, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, violated one or more Kentucky statutes or regulations.

128.   As a direct and proximate result of Defendants' statutory or regulatory violations, Plaintiffs suffered physical, mental and/or emotional injuries, death and/or loss of consortium.

129.   If Defendants had not violated Kentucky statutes and regulations, Plaintiffs would not have suffered any physical, mental and/or emotional injuries, death and/or

Filed          22-CI-00362        12/08/2022      Emily Ward Buzanis, Graves Circuit Clerk

loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

130.    As a result of Defendants' actions, Plaintiffs have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, destruction of the power to labor and earn money, funeral expenses, loss of consortium, increased risk of future injury and increased insurance premiums.

131.    The actions, inactions, failures and omissions of Defendants as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs and others.

132.    This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

### **REQUEST FOR RELIEF**

**WHEREFORE**, the Plaintiffs, respectfully request and pray for the following relief:

1.    Judgment against the Defendants in an amount that will fully, justly, fairly and reasonably compensate Plaintiffs for the harms suffered, losses incurred and damage caused by Defendants.

2.    For punitive or exemplary damages to punish the conduct of the Defendants and to deter them and others from engaging in similar conduct;

3.    For a trial by jury;

4.    For pre-judgment and post-judgment interest from the date of the damages incurred until paid;

5.    For costs herein expended;

Filed          22-CI-00362        12/08/2022          Emily Ward Buzanis, Graves Circuit Clerk



6.   For the right to amend this Complaint to add other claims and parties as the proof allows; and

7.   For all other necessary and proper relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ William D. Nefzger
William D. Nefzger
BAHE COOK CANTLEY & NEFZGER PLC
The BCCN Building
1041 Goss Avenue
Louisville, Kentucky 40217
will@bccnlaw.com
(502) 587-2002 – Telephone
(502) 587-2006 – Facsimile
*Co-Counsel for Plaintiffs*

Amos N. Jones
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
jones@amosjoneslawfirm.com
(202) 351-6187 – Telephone
*Co-Counsel for Plaintiffs (pending* pro hac
vice *admission)*

/s/ William L. Davis
William L. Davis
108 Pasadena Drive, Suite 200
Lexington, Kentucky 40503
(859) 260-1997 (Office)
(859) 260-1310 (Fax)
wmldavis@hotmail.com
*Co-Counsel for Plaintiffs*



**Commonwealth of Kentucky**

**Emily Ward Buzanis, Graves Circuit Clerk**

NOT ORIGINAL DOCUMENT
01/03/2023 09:57:13 AM
85355

| | |
|---|---|
| **Case #: 22-CI-00362** | **Envelope #: 5353170** |
| **Received From: WILLIAM NEFZGER** | **Account Of: WILLIAM NEFZGER** |
| **Case Title: ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A** | **Confirmation Number: 153944006** |
| **Filed On 12/8/2022  12:16:23PM** | |

| # | Item Description | Amount |
|---|---|---|
| 1 | Court Facilities Fee | $10.00 |
| 2 | Access To Justice Fee | $20.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Money Collected For Others(Postage) | $32.00 |
| 5 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 6 | Library Fee | $1.00 |
| 7 | Civil Filing Fee | $150.00 |
| 8 | Charges For Services(Copy - Photocopy) | $6.80 |
| 9 | Charges For Services(Jury Demand / 12) | $70.00 |
| | **TOTAL:** | $314.80 |



| AOC-E-105 | Sum Code: CI | | NOT ORIGINAL DOCUMENT |
|---|---|---|---|

AOC-E-105　　Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice　　*Courts.ky.gov*

CR 4.02; Cr Official Form 1

**CIVIL SUMMONS**

NOT ORIGINAL DOCUMENT
01/09/2023　Case #: **22-CI-00362**
85355　Court: **CIRCUIT**
County: **GRAVES**

---

*Plaintiff,* **ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A**, *Defendant*

TO:　**CT CORPORATION SYSTEM**
　　**306 WEST MAIN STREET**
　　**SUITE 512**
　　**FRANKFORT, KY 40601**

Memo: Related party is MAYFIELD CONSUMER PRODUCTS, LLC

The Commonwealth of Kentucky to Defendant:
**MAYFIELD CONSUMER PRODUCTS, LLC**

　　You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Emily Ward Suzans*

Graves Circuit Clerk
Date: **12/8/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

　　To: _____

☐ Not Served because: _____

Date: _____, 20 _____　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Served By

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Title

Summons ID: @00000097262
CIRCUIT: 22-CI-00362 Certified Mail
ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A

Presiding Judge: HON. KEVIN D. BISHOP (652418)

CI : 000001 of 000001



Page 1 of 1

eFiled

| | | |
|---|---|---|
| AOC-E-105<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | NOT ORIGINAL DOCUMENT<br>01/03/2023 12:28:06 PM<br>85355<br><br>Case #: **22-CI-00362**<br>Court:   **CIRCUIT**<br>County: **GRAVES** |

*Plaintiff,* **ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A**, *Defendant*

TO:  **JUSTIN BOBBITT**

**22 RIFLE TRAIL ROAD**

**HICKORY, KY 42051**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Emily Ward Curans*

Graves Circuit Clerk
Date: **12/8/2022**

Presiding Judge: HON. KEVIN D. BISHOP (652418)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 _____

_____
Served By

_____
Title

CI : 000001 of 000001

Summons ID: @00000097263
CIRCUIT: 22-CI-00362 Certified Mail
ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A



Page 1 of 1

eFiled

Filed 12/19/2022   Emily Ward Buzanis, Graves Circuit Clerk

NOT ORIGINAL DOCUMENT
01/03/2023 09:57:43 AM
85355

**UNITED STATES POSTAL SERVICE**

Date Produced: 12/19/2022

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8398 0791 81. Our records indicate that this item was delivered on 12/13/2022 at 07:25 a.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :

Delivery Section

Signature
X   Kelly King

Printed
Name   Kelly King

Address of Recipient :

Delivery
Address

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:   C3859482.22977624

AOS : 000001 of 000001

Filed 12/19/2022 Emily Ward Buzanis, Graves Circuit Clerk
NOT ORIGINAL DOCUMENT
01/03/2023 10:03:26 AM
85355

**UNITED STATES**
**POSTAL SERVICE**™

Date Produced: 12/19/2022

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8398 0792 11. Our records indicate that this item was delivered on 12/13/2022 at 10:33 a.m. in HICKORY, KY 42051. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :     **22 RIFLE TRL HICKORY, KY 42051**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:     C3859482.22977625

Filed     22-CI-00362     12/19/2022     Emily Ward Buzanis, Graves Circuit Clerk

COMMONWEALTH OF KENTUCKY
GRAVES CIRCUIT COURT
CIVIL ACTION NO. 22-CI-00362
*ELECTRONICALLY FILED*

DUSTIN ALIFF, ROBERTA BROOKS,                                    PLAINTIFFS
JEFF CHISM as personal
representative of the Estate of JILL
MONROE, JEMARYON HART,
MONSERRATE DE LA PAZ LOPEZ
JUSTINIANO as personal
representative of the Estate of IVÁN
RAMIREZ LOPEZ, CHANCE PITTS,
PATRICIA SCOTT as personal
representative of the Estate of KAYLA
MARIE SMITH, KRISTIE WHITE,
MONTEL WIGGINS, DARRYL
YONTS, MARCO SANCHEZ, ELIJAH
JOHNSON, WILLIAM ALIFF,
MATTHEW BARBER, MARY SMITH,
HALEY CONDER, MCKAYLA
EMERY, MATTHEW RILEE VALIANT,
and JOHN LAWSON

v.                    **AMENDED COMPLAINT**

MAYFIELD CONSUMER
PRODUCTS, LLC; JUSTIN BOBBETT
and LORENZO H. CASH                                    DEFENDANTS

\* \* \* \* \* \* \* \* \*

Come now the Plaintiffs, by counsel, and for their Amended Complaint against

the Defendants, state as follows:

**PARTIES**

1.      At all times relevant to this action, Plaintiffs or Plaintiffs' decedents

Roberta Brooks, Jill Monroe, Iván Ramirez Lopez, Chance Pitts, Kayla Marie Smith,

Kristie White, Darryl Yonts and Marco Sanchez were residents of Graves County,

Kentucky.

Notice Exhibit 0001

15641D69-8D46-4E45-8A33-87BA934517SB : 000002 of 000072

2.      At all times relevant to this action, Plaintiffs Jemaryon Hart and Montel Wiggins were residents of McCracken County, Kentucky.

3.      At all times relevant to this action, Plaintiff Dustin Aliff was a resident of Marshall County, Kentucky.

4.      At all times relevant to this action, Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, and John Lawson were residents of Graves County, Kentucky.

5.      At all times relevant to this action, Plaintiffs William Aliff and Matthew Rilee Valiant were residents of Marshall County, Kentucky.

6.      At all times relevant to this action, Plaintiff Matthew Barber was a resident of Ballard County, Kentucky.

7.      At all times relevant to this action, Defendant Mayfield Consumer Products LLC ("Defendant MCP" or "MCP") was a Kentucky business entity duly licensed and authorized to conduct business in the Commonwealth of Kentucky and was conducting business in Graves County, Kentucky.

8.      At all times relevant to this action, upon information and belief, Defendant Justin Bobbett ("Defendant Bobbett") was a resident of Graves County, Kentucky.

9.      At all times relevant to this action, upon information and belief, Defendant Lorenzo H. Cash ("Defendant Cash") was a resident of Graves or Calloway County, Kentucky.

10.     At all times relevant to this action, Defendants Bobbett and Cash were employees, servants, agents, representatives, ostensible agents, operators, owners, members, managers, shareholders and/or partners of Defendant MCP.

AMC : 000002 of 000037

## JURISDICTION & VENUE

11.     Venue is proper because at the time of the actions or inactions giving rise to the causes of action stated herein, the Defendants were located in Graves County, Kentucky, and/or the injuries to and/or death of Plaintiffs and/or Plaintiff's decedents occurred there.

## PROCEDURAL HISTORY

12.     On March 3, 2022, Plaintiffs Elijah Johnson, William Aliff, Matthew Barber, Mary Smith, Haley Conder, McKayla Emery, Matthew Valiant and John Lawson filed their Verified Class Action Civil Complaint in Graves Circuit Court, *Johnson v. Mayfield Consumer Products, LLC*, 22-CI-00040.

13.     At the time of the filing, Plaintiffs failed to ascertain the full name of Defendant Cash or the correct spelling of Defendant Bobbett.

14.     On March 25, 2022, Defendant MCP filed a Notice of Removal removing the case to the United States District Court for the Western District of Kentucky. *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, DE #: 1 (W.D. Ky.).

15.     On May 18, 2022, Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson filed a Motion for Leave to Amend Complaint seeking to add Defendant Bobbett as a party Defendant. *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, DE #: 14 (W.D. Ky.). At the time of the filing, Plaintiffs failed to ascertain the full name of Defendant Cash or the correct spelling of Defendant Bobbett.

16.     On December 8, 2022, Plaintiffs, except for Marco Sanchez, filed this action. As of that date, the federal court had issued no ruling on the motion. Therefore, out of an abundance of caution that the federal court may deny their motion to add

15641D69-8D46-4E45-8A33-87BA9345175B : 000003 of 000072

AMC : 000003 of 000037

3

Defendant Bobbett as a party Defendant, Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson brought claims in the Complaint against Defendant Bobbett only. At the time of the filing, Plaintiffs failed to ascertain the full name of Defendant Cash or the correct spelling of Defendant Bobbett.

17.     On December 21, 2022, the federal court denied the motion. *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, DE #: 40 (W.D. Ky.). At the time of the denial, Plaintiffs failed to ascertain the full name of Defendant Cash or the correct spelling of Defendant Bobbett.

18.     Neither *Johnson v. Mayfield Consumer Products, LLC*, 22-CI-00040 (Graves Cir. Ct.), nor *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, (W.D. Ky.) lists Defendant Cash as a Defendant, and due to the denial of the motion, neither includes Defendant Bobbett as a party. Thus, Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson bring their claims in this Amended Complaint against Defendants Bobbett and Cash only.

19.     By naming Defendant Cash in this action, Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson do not waive their ability or right to move the federal court to amend their Complaint in *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, (W.D. Ky.) and add Defendant Cash as a party in that action.

20.     Neither *Johnson v. Mayfield Consumer Products, LLC*, 22-CI-00040 (Graves Cir. Ct.), nor *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, (W.D. Ky.) lists Plaintiffs Dustin Aliff, Roberta Brooks, Jeff Chism as personal representative of the Estate of Jill Monroe, Jemaryon Hart, Monserrate De La Paz

15641D69-8D46-4E45-8A33-87BA9345175B : 000004 of 000072

AMC : 000004 of 000037

15641D69-8D46-4E45-8A33-87BA9345175B : 000005 of 000072

Lopez Justiniano, as personal representative of the Estate of Iván Ramirez Lopez, Chance Pitts, Patricia Scott as personal representative of the Estate of Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez individually.

21.     Thus, Plaintiffs Dustin Aliff, Roberta Brooks, Jeff Chism as personal representative of the Estate of Jill Monroe, Jemaryon Hart, Monserrate De La Paz Lopez Justiniano, as personal representative of the Estate of Iván Ramirez Lopez, Chance Pitts, Patricia Scott as personal representative of the Estate of Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez bring their claims in this Amended Complaint against all named Defendants.

## FACTS

22.     MCP is a 500-employee company including assembly-line laborers employed directly by it and through temporary staffing agencies in the Jackson Purchase region of western Kentucky.

23.     Operating several manufactories in the region, MCP produces scented candles for upscale retailers whom the company supplies through mass distribution channels.

24.     The company's factory at 112 Industrial Drive, Mayfield, Kentucky, 42066 was a 24-hour operation that produced candles for retailers, including Bath & Body Works.

25.      MCP operates a plant in Hickory, Kentucky, which is about six miles north of Mayfield in Graves County.

AMC : 000005 of 000037

26.     MCP had a history of workplace safety violations in recent years, having been cited by the Kentucky Department of Workplace Standards, Division of Occupational Safety and Health, for serious transgressions as recently as 2019.

27.     In September 2019 alone, that state division issued seven violations of safety standards coded as "serious," resulting in fines.

28.     By December 2021, MCP had been ramping up production to meet holiday demand, and employees were working 10 to 12-hour shifts with required Saturdays for incentive and/or overtime pay.

29.     During this season, MCP employees were working 10-hour shifts five days per week.

30.     In the incentive- and overtime-pay scheme operated by MCP required employees to work at least every other Saturday in order for employees to obtain compensation beyond Plaintiffs' standard base pay of $8/hour, once they had worked 50 hours in a given week. Therefore, terminating Plaintiffs during a Friday night shift at holiday time, after they had put in upwards of 50 hours already worked, would have effected a devastating financial blow, absent the Saturday shift numerous Plaintiffs intended to work on Saturday, December 11, 2021.

31.     On Friday, December 10, 2021, MCP required Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, Matthew Barber, William Aliff, Matthew Rilee Valiant, John Lawson, Dustin Aliff, Roberta Brooks, Jill Monroe, Jemaryon Hart, Iván Ramirez Lopez, Chance Pitts, Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez and other similarly situated employees to continue to work at its place of business even though it knew or should have known about the

15641D69-8D46-4E45-8A33-87BA9345175B : 000006 of 000072

AMC : 000006 of 000037

expected tornado and the danger of serious bodily injuries and death to its employees and others at its place of business, if its employees and others were required to remain at its place of business during the pendency of the expected tornado.

32.     MCP had up to three and one-half hours before the tornado struck its place of business to allow its employees and others to leave its worksite as a safety precaution.

33.     MCP refused to allow Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, Matthew Barber, William Aliff, Matthew Rilee Valiant, John Lawson, Dustin Aliff, Roberta Brooks, Jill Monroe, Jemaryon Hart, Iván Ramirez Lopez, Chance Pitts, Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez and other similarly situated employees to leave work before the tornado actually struck its place of business even though it had at least three hours of notice of the danger this tornado posed to its place of business and to its employees.

34.     MCP repeatedly threatened to terminate the employment of any employee who left because of the expected tornado in the hours before the tornado actually struck its place of business.

35.     One media report by Bruce Schreiner, published on December 15, 2021, at 6:37 a.m. ET, states the following:

> MAYFIELD, Ky. (AP) — An employee of the Kentucky candle factory where eight workers were killed by a tornado said Tuesday that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching.
>
> Haley Conder, who worked at the Mayfield Consumer Products factory on and off for 10 years, also questioned why the company did not encourage workers to go home — or at least give them a better understanding of the danger — between a first tornado siren around 6 p.m. Friday and another one around 9 p.m., shortly before the tornado struck.

15641D69-8D46-4E45-8A33-87BA9345175B : 000007 of 000072

AMC : 000007 of 000037

15641D69-8D46-4E45-8A33-87BA934517SB : 000008 of 000072

"They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

… More than 100 people were working on holiday candle orders when the twister leveled the facility. The scale of the damage initially stoked fears that scores of workers could be found dead in the rubble.

36.     Another media report by Eileen Street, published at 3:43 p.m. ET on

December 14, 2021, states the following:

LOUISVILLE, Ky. — Last Friday, Dec. 10, 110 employees were working at Mayfield Consumer Products, the candle factory in Mayfield destroyed by a tornado. A volunteer spokesperson for Mayfield consumer products told Spectrum News 1 on Tuesday that out of the 110 people at the factory Friday night, eight are confirmed dead and the rest have been accounted for…. Jamie Brien also worked that night. The floor supervisor at Mayfield Consumer Products told Spectrum News 1 he called the production manager Thursday night.

"And asked him you, you know, 'How was we going to deal with the storm?' That it was supposed to be pretty bad, you know, the following night," Brien said. "And he just said, 'We would deal with it as it unfolded,' and that's what we did." … "When the alarm went off the second time, yes, that's when I thought, 'Man, we should've probably sent everybody home,'" Brien said. "You know, 'Here we go again,' and the storm is intensified from, you know, 5:30 [p.m. CST] when the other alarm had went off…. Parsons-Perez didn't think twice about going to work Friday. The Chicago native said she is used to severe weather.

Reflecting back on Friday, Parsons-Perez said she believed that her immediate supervisor did everything he should have to protect her and her co-workers. However, she wasn't sure about the decisions made by those above her supervisor.

"Whoever his boss is probably should have said, 'We probably don't need to make those candles today. Maybe we should wait.' But they didn't," Parsons-Perez said.

37.     Another media report by Deon J. Hampton, published on December 13,

2021, at 3:57 p.m. ET and updated on December 14, 2021 at 7:49 a.m. ET, states the

following:

AMC : 000008 of 000037

MAYFIELD, Ky. — As a catastrophic tornado approached this city Friday, employees of a candle factory — which would later be destroyed — heard the warning sirens and wanted to leave the building. But at least five workers said supervisors warned employees that they would be fired if they left their shifts early.

For hours, as word of the coming storm spread, as many as 15 workers beseeched managers to let them take shelter at their own homes, only to have their requests rebuffed, the workers said."

"Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said."

"If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

… About 15 people asked to go home during the night shift shortly after the first emergency alarm sounded outside the facility, said another employee, Haley Conder. There was a three- to four-hour window between the first and second emergency alarms when workers should have been allowed to go home, she said.

…Elijah Johnson, 20, was working in the back of the building when several employees wanting to head home walked in to speak with supervisors. He joined in on the request.

"I asked to leave and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked.

"Yes," a manager responded, Johnson told NBC News.

Johnson said managers went so far as to take a roll call in hopes of finding out who had left work.

38.    Mary Smith requested to leave work and was told by two supervisors, Defendant Cash and Defendant Bobbett, that she could not leave and that if she did leave, she would be terminated. Also, she witnessed Defendant Bobbett tell multiple other employees that if they were to leave, they would be terminated. She witnessed Defendant Bobbett tell Elijah Johnson that Mr. Johnson could not leave and if Mr. Johnson were to leave, he would be terminated. She witnessed Defendant Bobbett

calling roll to ascertain whether any employees had left work so as to enforce MCP's earlier threat to terminate anyone who left work.

39.    Haley Conder asked to leave and was told by a supervisor that she could not leave. She had been informed that MCP's Human Resources officer on duty that night was going to terminate the employment of people who left.

40.    McKayla Emery said in an interview from her hospital bed that workers first asked to leave shortly after tornado sirens sounded outside the factory around 5:30 p.m. They were told by supervisors that they could not leave.

41.    Employees at the Hickory Point plant owned by MCP were directed NOT to come to work by MCP the afternoon of December 10, 2021, due to the weather. When MCP employees at the 112 Industrial Drive plant asked to leave to go home in her presence, though, Ms. Emery witnessed Defendant Bobbett, the main overnight supervisor, say: "**You more than likely will lose your job.**"

42.    Matthew Barber requested to leave work and was told by two supervisors, Defendant Cash and Defendant Bobbett, that he could not leave and if he were to leave that he would be terminated. Also, Mr. Barber witnessed Defendant Bobbett telling employees that if they were to leave, then they would be terminated. Mr. Barber witnessed Defendant Bobbett tell Elijah Johnson that Mr. Johnson could not leave and if Mr. Johnson were to leave, he would be terminated.

43.    Dustin Aliff requested to leave work and was told by a supervisor that he would be terminated.

44.    William Aliff requested to leave work and was told by a supervisor that he would be terminated.

Notice Exhibit 0010

45.     Matthew Rilee Valiant requested to leave work and was told by Defendant Cash, his supervisor, that if he left, he would be terminated. He also witnessed Defendant Cash stating in general that if anybody left, they would be terminated on the spot.

46.     John Lawson had just relocated to Mayfield from Reno, Nevada, in order to be closer to his grandchildren. He had worked at the factory in quality control for one week prior to December 10, 2021. After supervisors barred employees from leaving, he voiced concerns that workers should be allowed to leave and noted that if this severe weather event were forecast in Nevada, the company would have shut down simply to avoid liability in the event of a mass casualty event. In response, female supervisor Jennifer J. laughed and said, "Welcome to Kentucky." According to GPS on a device belonging to Mr. Lawson, he still would have had 13 minutes after her comment to get clear of the path of the tornado and before the factory was twisted and smashed with all 110 employees on duty affected. The destruction caused by the tornado buried Mr. Lawson in rubble. It took three to four hours for emergency personnel and others to dig him out as he lay adjacent to a deceased victim.

### *MCP Commences a False-Light Cover-up Scheme*

47.     Elijah Johnson stated in an NBC interview (which was reported by Deon J. Hampton as published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021) that he had been working in the back of the building when several employees wanting to go home walked in to speak with supervisors. He joined in on the request. "I asked to leave, and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked. "Yes," a manager responded,

Johnson told NBC News. Johnson said managers went so far as to take a roll call in hopes of finding out who had left work, so that they could terminate them as promised.

48.     Haley Conder gave a telephonic interview to the Associated Press (which is reported by Bruce Schreiner as published on December 15, 2021, at 6:37 a.m. ET) and stated therein that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching. "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

49.     McKayla Emery stated in an interview (which is in the report by Deon J. Hampton published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021), "Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said." "If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

50.     Robert (Bob) Ferguson, a former partner at global public-relations behemoth Fleishman-Hillard who is the CEO and a founder of The Hawksbill Group, a business and communications consulting firm based in Washington, D.C. (hereinafter referred to as "Ferguson"), was deployed by MCP as its engaged spokesperson in the aftermath of the tornado and the damage caused by said tornado. In his capacity as an authorized agent of MCP, Ferguson placed the character of Elijah Johnson, Haley Conder, and McKayla Emery in a false light

during interviews he gave to various news organizations that were published to the public.

51.     The article, titled "Ky. Candle Workers Sue Factory, Claiming They Couldn't Leave Before Deadly Tornado Employees are seeking compensation, punitive damages and legal fees" by Natasha Dado published December 17, 2021 03:10 PM, states in relevant parts the following: "Similarly, NBC News reported that at least five workers claimed supervisors told workers they would be terminated if they left the workplace early. Mayfield Consumer Products spokesman Bob Ferguson — who did not immediately return PEOPLE's request for comment about the suit — told NBC News that the allegations in its story were 'absolutely untrue.' 'We've had a policy in place since Covid began. Employees can leave any time they want to leave and they can come back the next day,' the spokesperson added."

52.     Also, the article titled "Mayfield candle factory tornado survivors sue company, allege 'flagrant indifference'" by Ben Tobin of the Louisville Courier-Journal, published at 7:02 a.m. ET on Dec. 16, 2021, and updated at 12:13 p.m. ET on Dec. 17, 2021, states in relevant parts the following:

> Ferguson has repeatedly denied claims about Mayfield Consumer Products threatening employees and refusing to let them leave, calling them "incredibly false." "Employees can go home at any time without any penalty," Ferguson previously told The Courier Journal. "Since COVID has made it so difficult to find employees, we have mended our practices. If someone comes to work, and three hours into the shift, they say 'I want to go home,' they're free to go home without penalties, and they can come back to work the next day and start."

53.     The article titled "Attorney claims 'smoking gun' as Mayfield factory workers consider lawsuit" by Jared Bennett of the Kentucky Center for Investigative Reporting published on Dec. 15, 2021, in relevant parts states: "Bob Ferguson of the

Hawksbill Group, the Washington D.C. based public relations firm representing the company, said earlier this week that any reports that employees weren't free to leave was 'baloney.' Reached by phone Tuesday, Ferguson said he stands by that statement."

### *MCP Defames its Honest Employees' Character using the Mass Media*

54.     Elijah Johnson stated in the NBC interview (which is reported in the media report by Deon J. Hampton, published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021) that he was working in the back of the building when several employees wanting to go home walked in to speak with supervisors. He joined in on the request. "I asked to leave and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked. "Yes," a manager responded, Johnson told NBC News. Johnson said managers went so far as to take a roll call in hopes of finding out who had left work, so that they could terminate them.

55.     Haley Conder spoke directly with the Associated Press (which is reported by Bruce Schreiner, published on December 15, 2021, at 6:37 a.m. ET) and stated therein that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching, according to the Schreiner report: "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

56.     McKayla Emery stated in an interview (which is reported in the televised and printed NBC report by Deon J. Hampton, published on December 13, 2021, at 3:57

p.m. EST and updated on December 14, 2021), "Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said." "If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

57.     Ferguson, engaged by MCP to be its spokesperson and in his capacity as an authorized agent of MCP, defamed the character of Elijah Johnson, Haley Conder, and McKayla Emery during interviews he gave to various news organizations that were published to the public.

58.     The *People Magazine* article titled "Ky. Candle Workers Sue Factory, Claiming They Couldn't Leave Before Deadly Tornado Employees are seeking compensation, punitive damages and legal fees" by Natasha Dado, published December 17, 2021, at 3:10 PM, states in relevant parts the following: "Similarly, NBC News reported that at least five workers claimed supervisors told workers they would be terminated if they left the workplace early. Mayfield Consumer Products spokesman Bob Ferguson — who did not immediately return PEOPLE's request for comment about the suit — told NBC News that the allegations in its story were "absolutely untrue." "We've had a policy in place since Covid began. Employees can leave any time they want to leave and they can come back the next day," the spokesperson added."

59.     Also, the article titled "Mayfield candle factory tornado survivors sue company, allege 'flagrant indifference'" by Ben Tobin of the Louisville Courier Journal, as published at 7:02 a.m. ET Dec. 16, 2021, and updated at 12:13 p.m. ET Dec. 17, 2021, states in relevant parts the following:

> Ferguson has repeatedly denied claims about Mayfield Consumer Products threatening employees and refusing to let them leave, calling them "incredibly

15641D69-8D46-4E45-8A33-87BA9345175B : 000015 of 000072

AMC : 000015 of 000037

false." "Employees can go home at any time without any penalty," Ferguson previously told The Courier Journal. "Since COVID has made it so difficult to find employees, we have mended our practices. If someone comes to work, and three hours into the shift, they say 'I want to go home,' they're free to go home without penalties, and they can come back to work the next day and start."

60.    The article titled "Attorney claims 'smoking gun' as Mayfield factory workers consider lawsuit" by Jared Bennett of the Kentucky Center for Investigative Reporting published on Dec. 15, 2021, in relevant parts states the following: "Bob Ferguson of the Hawksbill Group, the Washington D.C. based public relations firm representing the company, said earlier this week that any reports that employees weren't free to leave was 'baloney.' Reached by phone Tuesday, Ferguson said he stands by that statement."

### *MCP Refuses to Correct False Statements and Continues Global Onslaught*

61.    Still recovering from the injuries arising from having been trapped under tornado rubble at his workplace, Plaintiff Johnson grew appalled by the words and actions attributed to his employer through its agent, the D.C.-based Ferguson, in global media outlets.

62.    Mr. Johnson sought counsel in Washington, D.C. to address Ferguson and subsequently retained counsel in Kentucky to resolve the false statements.

63.    On December 15, 2021, The Courier-Journal's Ben Tobin reported on the mortifying impasse caused by Defendant MCP:

> The only client [Counsel to Johnson] Jones identified is 20-year-old Elijah Johnson. The others, he said, "are not being identified by name because of real-time reprisals that already have begun."

> Jones said he has sent Mayfield Consumer Products, its CEO Troy Propes and its spokesperson Bob Ferguson a "cease-and-desist" to stop claiming that candle factory employees could have left at any point and that their jobs were not threatened for leaving before the tornado demolished the factory.

16

Jones said he was giving the company until 5 p.m. Wednesday to comply and retract its statements. He provided an email to The Courier Journal sent to info@hawksbillgroup.com — the email address for The Hawksbill Group, a consulting firm for which Ferguson is CEO — that was sent at 11:50 p.m. Tuesday.

Jones said he tried to call Ferguson on Wednesday morning.

Ferguson told The Courier Journal on Wednesday morning the company has not received a cease-and-desist request or any notice of pending litigation. Asked if he stands by his earlier comments to The Courier Journal that employees' claims of being threatened over leaving the candle factory were "incredibly false," he said "of course."

64.     Thus, MCP refused to retract its false and defamatory statements when given the opportunity to do so prior to institution of legal proceedings.

### *Sued in Court, MCP Temporarily Ceases Defamation*

65.     After the 5 p.m. December 15 deadline passed amid the reported intransigence by MCP, and with no direct acknowledgement of Mr. Johnson's demand by it, Mr. Johnson filed suit around 7:30 p.m. Central Daylight Time on Wednesday December 15, 2021.

66.     On December 16, 2021, after being notified of the lawsuit, MCP temporarily re-directed its media narrative — from attacking its employees who had told the truth to spinning the supervisors' trapping of MCP's employees as a "heroic" sheltering effort.

67.     Louisville news outlet 89.3 WFPL reported from the Kentucky Center for Investigative Reporting that day as follows:

An employee of the Mayfield candle factory who survived the building's collapse during last week's tornado has filed a lawsuit claiming the company did not adequately protect them during the storm.

Eight people died when the storm hit; there were 110 people inside the building.

The lawsuit was filed in Graves Circuit Court on behalf of Elijah Johnson and other "similarly situated" employees of Mayfield Consumer Products. The suit claims the company refused to let its employees leave the factory Friday night, even though the factory had "at least 3 hours' notice of the danger" the severe weather could bring.

[…] Bob Ferguson, a spokesperson for Mayfield Consumer Products, could not be immediately reached for comment. Ferguson said this week that employees were free to leave without retribution.

Amos Jones, a Washington, D.C. based attorney working with [Kentucky counsel of record William] Davis on the case, said they decided to file the lawsuit after the company retained a public relations firm to deny the claims of surviving employees.

"It's not even spin, it's a cover up," Jones said Thursday. Jones issued a press release this week claiming a "smoking gun": he later told KyCIR that an employee had a recording backing up the claims they faced firing if they left. But there are no details about the evidence or allegations in the lawsuit beyond those cited in news stories.

[…] On Tuesday, Mayfield Consumer Products CEO Troy Propes announced in a statement that the company had hired experts to investigate how managers handled the storm.

"We're confident that our team leaders acted entirely appropriately and were, in fact, heroic in their efforts to shelter our employees," the statement said.

### *MCP Falsely Tells NBC that Johnson was Never at Work during Tornado*

68.     On or about Friday, December 17, NBC News reporter Deon J. Hampton, who had published widely over the week on Mr. Johnson's account of this harrowing ordeal inside MCP's workplace before, during, and after the tornado, telephoned Mr. Johnson and invited him to "come clean" if what MCP had just told him were true.

69.     Mr. Johnson replied, "What did MCP say?"

70.     Mr. Hampton informed Mr. Johnson that NBC had just been threatened with a defamation lawsuit against it by MCP. MCP's purported basis for this claim was NBC's reporting of anything Mr. Johnson had said about the tornado at the MCP candle

15641D69-8D46-4E45-8A33-87BA9345175B : 000019 of 000072

factory because, according to MCP in its grievance conveyed to Hampton and his superiors in the storied news organization, Mr. Johnson <u>had never been at work</u> at MCP's factory on the night the high-end EF4 tornado struck and destroyed the building, and (as *in fact known by MCP when it attacked NBC*) had trapped Mr. Johnson under its rubble for hours, and causing Mr. Johnson's need to be transported to and treated in the hospital well into the morning of Saturday December 11, 2021.

71.     MCP sought to decapitate this action hours after it was filed by going after, but as stated *supra* in the December 15 Courier-Journal publication: "[t]he only client Jones identified[, was] 20-year-old Elijah Johnson. The others, he said, 'are not being identified by name because of real-time reprisals that already have begun.'"

72.     MCP's defamatory, false-light offensive failed, as numerous other in-good-standing employees of it who had witnessed Mr. Johnson's plea in real time prior to the tornado (and/or who themselves had reported the same warning from some of the same managers) immediately came forward to contact and to retain the counsel seeking remedies in this action.

73.     Upon information and belief, MCP as late as Tuesday December 21, 2021 – Christmas Week, and with a state investigation into its safety practices announced as under way by Kentucky Governor Andy Beshear — had gone back to its slash-and-burn-employees/survivors public misconduct, according to the insurance trade publication *NU Property Casualty 360*, which reported at 4 a.m. that day under the headline "Candle factory hit by tornado facing workplace hazards lawsuit/The employees allege the company required them to stay at work or face discipline, despite warnings that dangerous weather was approaching:" "Mayfield Consumer Products

AMC : 000019 of 000037

spokesman Bob Ferguson, who works for a public relations firm, denied that employees

were stuck at the plant or faced" discipline.

> ***MCP did not train these named plaintiffs in emergency safety protocols and only had one hallway, one men's restroom, and one women's restroom for its 110 employees to shelter in during the tornado and no indoor emergency alarm system.***

74.    Ferguson, engaged by MCP to be its spokesperson and in his

capacity as an authorized agent of MCP, told the Associated Press in a

published report the following: "Many of the employees were gathered in the tornado

shelter and after the storm was over they left the plant and went to their homes."

75.    MCP did not train these named plaintiffs in emergency safety protocols

and only had one hallway, one men's restroom and one women's restroom for its 110

employees to shelter in during the tornado.

76.    Mark Saxton, 37, who worked at the facility as a forklift operator, said the

following in an NBC news interview: "The first warning came, and they just had us go in

the hallway. After the warning, they had us go back to work," he said to NBC. "They

never offered us to go home."

77.    Haley Conder in an NBC news interview said the following:

After the first siren sounded, she said that workers were kept in the facility's hallways and bathrooms because shift leaders allegedly said the employees were required to stay due to safety procedures....When the second tornado siren went off at around 9 p.m. local time, Conder said she and a group of coworkers asked to leave, but were told by managers, "you can't leave" and "you have to stay here." She added, "The situation was bad. Everyone was uncomfortable."

78.    Also, Conder had worked for MCP for one and half years before the

tornado demolished its factory. In that time, she was never trained on safety protocols

by MCP other than being told to go to the restroom during her orientation which only

15641D69-8D46-4E45-8A33-87BA9345175B : 000020 of 000072

AMC : 000020 of 000037

included a walk through the hallway leading to the restrooms and instruction to go there.

79.     McKayla Emery had previously been employed by MCP off and on since 2018. She recently was employed by MCP from May 2021 to October 2021 and from November 2021 to December 2021 and was working there at the time the tornado hit MCP's factory. Her orientations by MCP did not include any training on emergency safety protocols other than telling her to go to the restrooms and the hallway.

80.     Matthew Rilee Valiant worked for MCP two and one-half months and was working at MCP's factory when the tornado demolished it. In that time, he was never trained on any safety protocols.

81.     William Aliff, Dustin Aliff, Matthew Barber and Mary Smith were working at MCP's factory when the tornado demolished it. Prior to the tornado demolishing said factory, they never received any training on any safety protocols by MCP.

82.     Elijah Johnson was working at MCP's factory when the tornado demolished the factory while he and 109 employees were actually inside the factory. His orientation by MCP in the nine months that he was working there before the tornado demolished the factory did not include any training on emergency safety protocols other than telling him to go to the restrooms and the hallway.

83.     In addition, MCP's factory did not have any emergency alarm inside the building. The only emergency alarm that was relied upon by MCP's supervisors on the day of the tornado was the public emergency alarm that was going off outside of the factory.

21

15641D69-8D46-4E45-8A33-87BA9345175B : 000021 of 000072

AMC : 000021 of 000037

Notice Exhibit 0021

84.     On June 6, 2022, after interviews with numerous current and former employees including nearly all of the class representatives in the Graves Circuit Court action, the Commonwealth of Kentucky Labor Cabinet (operating pursuant to the powers delegated by the federal Occupational Safety and Health Administration (OSHA)) issued seven violations – some marked "serious" – plus $40,000 in fines for safety deficiencies in its "Citation and Notification of Penalty" against Defendant MCP. The agency found MCP to have been seriously deficient in emergency readiness, fitness, and response at the candle factory at the time of the tornado deaths. The Citation set out abatement deadlines; MCP is challenging the findings.

85.     On March 22, 2022, MCP had sued its demolished factory-site landlord in federal court in Paducah through the case captioned MAYFIELD CONSUMER PRODUCTS, LLC, v. UB (MVP-MAYFIELD) LLC, Defendant, and MVP Group International, Inc., Interested Party (Case No. 5:22-cv-00046-BJB), in which MCP reported insurance limits of $40,000,000 on its there-relevant policy, of which $15,000,000 appeared to have been allocated for MCP's successful rebuilding effort that attracted positive attention, including plaudits at a press conference held by Governor Andy Beshear amid MCP's reopening and expansion. Court records show that as of July 20, 2022, that case is in mediation.

86.     Meanwhile, led by Johnson, a group of survivors came forward on November 18, 2022, with a formal filing at the National Labor Relations Board (NLRB) alleging to federal enforcers that MCP retaliated against them for their participation in the OSHA investigation – retaliation allegedly including MCP's refusal to pay medical bills, MCP's insurer's cutting participating ex-employees' workers' compensation

15641D69-8D46-4E45-8A33-87BA9345175B : 000022 of 000072

AMC : 000022 of 000037

benefits, and the resulting torment of an onslaught of collection activity against survivors by an Evansville, Indiana-based collection agency demanding thousands from numerous former workers who had participated in safety investigations after the factory collapsed on them.

87.     The very next day, on November 19, 2022 – nearing the one-year anniversary of the tornado, MCP deployed another Bob Ferguson-like agent to attack uncompensated, injured former employees – but this one changed the Defendant's story entirely.

88.     Responding to the filing that day of the National Labor Relations Board complaint on behalf of twenty MCP survivors, Attorney Edmund Sauer of Defendant MCP's Bradley law firm, issued a "Statement to the Media" quoted and posted by western Kentucky's National Public Radio affiliate based at Murray State University, WKMS-FM.

89.     Responding to the filing the previous day of a National Labor Relations Board complaint on behalf of twenty MCP survivors, MCP, through Sauer, was quoted in the article headlined "Mayfield candle factory destroyed by tornado facing retaliation charge from former employees" and dated November 22, 2022.

90.     A statement from MCP's legal counsel Edmund Sauer resolutely denied the allegations in the charge, WKMS reported.

91.     In the MCP statement the station supplied as a PDF available by link to the public, Edmund Sauer (1) _**admitted**_ that MCP workers were ordered not to leave that night, (2) attributed the decisions to company policy, and (3) cited "federal and state

law" as requiring what he called the "shelter in place" policy MCP now abruptly and contradictorily claims it was carrying out.

92.    Sauer averred:

> Elijah Johnson, according to MCP's time records, clocked in on the night of the tornado [more than two hours before the tornado hit and many hours after MCP had ordered its other factory closed] approximately 15 minutes before the tornado warning activated and MCP's shelter in place policy went into effect. MCP's investigation indicates that Mr. Johnson confirmed to another employee that he was told not to leave AFTER MCP's shelter in place policy was activated. This [] confirms that MCP complied with federal and state law, which requires employers to ensure that employees shelter in place during hazardous weather events. Anyone who has seen the cars on MCP's roof following the tornado can only imagine how many people would have died if MCP's brave supervisors on duty that night had not complied with the law.

93.    The published Sauer MCP "Statement to the Media" of November 19, 2022, clarifies the long-running cover-up MCP orchestrated in December 2021 that only has unraveled in public view over the 11 months since that effort began collapsing out of the gate, by which Defendant MCP has continually sought to discredit a chief witness who organized workers to mobilize for truth, including to avenge the wrongful deaths of their colleagues.

94.    The attack on Elijah Johnson and internally contradictory statements by Defendants through their agents evidences a pattern of public deception sustained now for twelve months, on the eve of the one-year anniversary of the horrific injuries Defendants caused.

### *Public confusion orchestrated by MCP and vicious denials of workers' compensation benefits alters deliberative domain for Personal Representatives of the deceased Plaintiffs*

95.     In the case of Kayla Marie Smith, the Personal Representative's or estate's continual communications and interactions with MCP and/or its workers' compensation insurance carrier representatives led Ms. Smith's Personal Representative to believe that $90,000 was the only option and full amount available for financial recovery for her loss of life.

96.     MCP stated this assertion, through its agents/insurance adjusters and/or other persons, in repeated communications about the payment between the date of the death and the payment itself months later.

97.     Even the final payment documents implied that the most that could be paid under the law was just $90,000. Under duress from the loss and seeing the serious legal conflicts and assault by MCP on the characters of former MCP employees in the media, the personal representative gave in and received the $90,000, concluding only after months of reflection and learning of serious OSHA violations that $90,000 was woefully insufficient for the loss of a young, vibrant life in the family.

98.     In the case of Iván Ramirez, the Personal Representative's or estate's continual communications and interactions with MCP and/or its workers' compensation insurance carrier representatives led Mr. Ramirez's Personal Representative to believe that $90,000 was the only option and full amount available for financial recovery for his loss of life.

99.     MCP stated this assertion, through its agents/insurance adjusters and/or other persons, in repeated communications about the payment between the date of the death and the payment itself months later.

15641D69-8D46-4E45-8A33-87BA934517SB : 000025 of 000072

AMC : 000025 of 000037

100.    Upon information and belief, MCP at first had concealed the death of Mr. Ramirez for an entire week. It was through a family investigation that the estate found his body in the morgue, and it had been transferred to Madisonville, Kentucky.

101.    MCP only then shipped the body to the family in Puerto Rico through Byrn Funeral Home.

102.    Even the final payment documents implied that the most that could be paid under the law was just $90,000. Under duress from the loss and seeing the serious legal conflicts and assault by MCP on the characters of former MCP employees in the media, the personal representative gave in and received the $90,000, concluding only after months of reflection and learning of serious OSHA violations that $90,000 was woefully insufficient for the loss of a young, vibrant life in the family.

103.    Later, the estate of Mr. Ramirez was faced with greed and opportunism as Defendant MCP, hewing to the strict $90,000-limit motif, later sought to recover $10,000 in funeral expenses Defendant MCP had contributed voluntarily as a good-will gesture: An oral communication through MCP manager Luz Cuevas to Ivelisse Ramirez Lopez presented the attempted corporate 180, though the estate did not pay MCP the workers' compensation. MCP had been cooperative in turning over the body to the family in Puerto Rico for Christian services and burial, but that cooperation took a dark turn that eventually caused the estate to hire counsel to protect the interests of the estate.

104.    In the case of Jill Monroe, the Personal Representative's or estate's continual communications and interactions with MCP and/or its workers' compensation insurance carrier representatives led Ms. Monroe's Personal Representative to believe

that $90,000 was the only option and full amount available for financial recovery for her loss of life.

105.    MCP stated this assertion, through its agents/insurance adjusters and/or other persons, in repeated communications about the payment between the date of the death and the payment itself months later.

106.    Even the final payment documents implied that the most that could be paid under the law was just $90,000. Under duress from the loss and seeing the serious legal conflicts and assault by MCP on the characters of former MCP employees in the media, the personal representative gave in and received the $90,000, concluding only after months of reflection and learning of serious OSHA violations that $90,000 was woefully insufficient for the loss of a young, vibrant life in the family.

## <u>COUNT I – FALSE IMPRISONMENT (ALL PLAINTIFFS)</u>

107.    Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson bring claims in this Count against Defendants Bobbett and Cash only.

108.    Plaintiffs Dustin Aliff, Roberta Brooks, Jeff Chism as personal representative of the Estate of Jill Monroe, Jemaryon Hart, Monserrate De La Paz Lopez Justiniano, as personal representative of the Estate of Iván Ramirez Lopez, Chance Pitts, Patricia Scott as personal representative of the Estate of Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez bring claims in this Count against all named Defendants.

109.    On or about December 10, 2021, Defendant MCP, by and through its agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, falsely imprisoned Plaintiffs.

15641D69-8D46-4E45-6A33-37BA9345175B : 000027 of 000072

AMC : 000027 of 000037

110.   On or about December 10, 2021, Defendant Bobbett, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, falsely imprisoned Plaintiffs.

111.   On or about December 10, 2021, Defendant Cash, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, falsely imprisoned Plaintiffs.

112.   As a direct and proximate result of Defendants' false imprisonment, Plaintiffs suffered physical, mental and/or emotional injuries, death and/or loss of consortium.

113.   If not falsely imprisoned, Plaintiffs would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

114.   As a result of Defendants' actions, Plaintiffs have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, destruction of the power to labor and earn money, funeral expenses, loss of consortium, increased risk of future injury and increased insurance premiums.

115.   The actions, inactions, failures and omissions of Defendants as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs and others.

Notice Exhibit 0028

15641D69-8D46-4E45-8A33-87BA934517SB : 000029 of 000072

116.   This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALL PLAINTIFFS)

117.   Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson bring claims in this Count against Defendants Bobbett and Cash only.

118.   Plaintiffs Dustin Aliff, Roberta Brooks, Jeff Chism as personal representative of the Estate of Jill Monroe, Jemaryon Hart, Monserrate De La Paz Lopez Justiniano, as personal representative of the Estate of Iván Ramirez Lopez, Chance Pitts, Patricia Scott as personal representative of the Estate of Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez bring claims in this Count against all named Defendants.

119.   On or about December 10, 2021, Defendant Bobbett, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, falsely imprisoned Plaintiffs. bring claims in this Count against all named Defendants.

120.   On or about December 10, 2021, Defendant MCP, by and through its agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality.

121.   On or about December 10, 2021, Defendant Bobbett, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, engaged in

AMC : 000029 of 000037
Notice Exhibit 0029

conduct so outrageous that it offended the generally accepted societal standards of decency and morality.

122.    On or about December 10, 2021, Defendant Cash, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality.

123.    Defendants, by and through their agents, representatives, employees, servants, ostensible agents, representatives, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, engaged in the conduct intentionally or recklessly.

124.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical, mental and/or emotional injuries and/or loss of consortium.

125.    If Defendants had not engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality, Plaintiffs would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

126.    As a result of Defendants' actions, Plaintiffs have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, loss of consortium, increased risk of future injury and increased insurance premiums.

127.    The actions, inactions, failures and omissions of Defendants as described

Notice Exhibit 0030

herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs and others.

128.    This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

## <u>COUNT III – STATUTORY VIOLATION (ALL PLAINTIFFS)</u>

129.    Plaintiffs Johnson, William Aliff, Barber, Smith, Conder, Emery, Valiant and Lawson bring claims in this Count against Defendants Bobbett and Cash in full, as well as against Defendant MCP to the extent *Johnson v. Mayfield Consumer Products, LLC*, 5:22-cv-44-BJB, (W.D. Ky.) does not contain the same averments this Amended Complaint Count contains.

130.    Plaintiffs Dustin Aliff, Roberta Brooks, Jeff Chism as personal representative of the Estate of Jill Monroe, Jemaryon Hart, Monserrate De La Paz Lopez Justiniano, as personal representative of the Estate of Iván Ramirez Lopez, Chance Pitts, Patricia Scott as personal representative of the Estate of Kayla Marie Smith, Kristie White, Montel Wiggins, Darry Yonts and Marco Sanchez bring claims in this Count against all named Defendants.

131.    On or about December 10, 2021, Defendant Bobbett, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality. bring claims in this Count against all named Defendants.

132.    Kentucky statutory law defines wantonly as follows in KRS 501.020(3):

"Wantonly" -- A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware

15641D69-8D46-4E45-8A33-87BA9345175B : 000031 of 000072

AMC : 000031 of 000037

of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

*Id.*

133.    Kentucky statutory law defines wantonly as follows in KRS 501.020(4):

"Recklessly" -- A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

*Id.*

134.    Kentucky statutory law provides that "[a] person is guilty of assault in the first degree when. . .[u]nder circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." KRS 508.010(1)(b).

135.    Kentucky statutory law provides that "[a] person is guilty of assault in the fourth degree when. . .[h]e intentionally or wantonly causes physical injury to another person. . . ." KRS 508.030(1)(b).

136.    Kentucky statutory law provides that "[a] person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.060(1).

15641D69-8D46-4E45-8A33-87BA934S175B : 000032 of 000072

AMC : 000032 of 000037

137.    Kentucky statutory law provides that "[a] person is guilty of wanton endangerment in the second degree when he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.070(1).

138.    Kentucky statutory law provides that "[a] person is guilty of unlawful imprisonment in the first degree when he knowingly and unlawfully restrains another person under the circumstances which expose that person to a risk of serious physical injury." KRS 509.020(1).

139.    Kentucky statutory law provides that "[a] person is guilty of unlawful imprisonment in the second degree when he knowingly and unlawfully restrains another person." KRS 509.030(1).

140.    Kentucky statutory law provides that "[a] person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:

    (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

    (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or

    (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so." KRS 502.020(1).

141.    Kentucky statutory law provides that "[a] corporation is guilty of an offense when:

    (a) The conduct constituting the offense consists of a failure to discharge a specific duty imposed upon corporations by law; or

(b) The conduct constituting the offense is engaged in, authorized, commanded or wantonly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment in behalf of the corporation; or

(c) The conduct constituting the offense is engaged in by an agent of the corporation acting within the scope of his employment and in behalf of the corporation and:

> 1.  The offense is a misdemeanor or violation; or

> 2.  The offense is one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation." KRS 502.050(1).

142.   Kentucky statutory law provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation. . . ." KRS 446.070.

143.   On or about December 10, 2021, Defendant MCP, by and through its agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, violated one or more Kentucky statutes or regulations.

144.   On or about December 10, 2021, Defendant Bobbett, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, violated one or more Kentucky statutes or regulations.

145.   On or about December 10, 2021, Defendant Cash, individually, and/or by and through his agents, representatives, employees, servants, vendors, ostensible agents, operators, owners, members, managers, officers and/or partners, violated one or more Kentucky statutes or regulations.

146.   As a direct and proximate result of Defendants' statutory or regulatory violations, Plaintiffs suffered physical, mental and/or emotional injuries, death and/or

15641D69-8D46-4E45-8A33-87BA9345175B : 000034 of 000072

AMC : 000034 of 000037

loss of consortium.

147.    If Defendants had not violated Kentucky statutes and regulations, Plaintiffs

would not have suffered any physical, mental and/or emotional injuries, death and/or

loss of consortium because all of them would have had ample time to avoid the path of

the tornado and seek and take safe shelter.

148.    As a result of Defendants' actions, Plaintiffs have endured, presently

endure or will continue to endure medical expenses, lost wages, physical pain, mental

suffering, mental anguish, impairment of the power to labor and earn money,

destruction of the power to labor and earn money, funeral expenses, loss of consortium,

increased risk of future injury and increased insurance premiums.

149.    The actions, inactions, failures and omissions of Defendants as described

herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive

and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs and others.

150.    This conduct rises to a level that warrants the imposition of punitive

damages pursuant to KRS 411.184 and 411.186.

## **REQUEST FOR RELIEF**

**WHEREFORE**, the Plaintiffs, respectfully request and pray for the following relief:

1.    Judgment against the Defendants in an amount that will fully, justly, fairly

and reasonably compensate Plaintiffs for the harms suffered, losses incurred and

damage caused by Defendants.

2.    For punitive or exemplary damages to punish the conduct of the

Defendants and to deter them and others from engaging in similar conduct;

3.    For a trial by jury;

4.    For pre-judgment and post-judgment interest from the date of the

damages incurred until paid;

5.    For costs herein expended;

6.    For the right to amend this Amended Complaint to add other claims and

parties as the proof allows; and

7.    For all other necessary and proper relief to which Plaintiffs may be

entitled.

Respectfully submitted,

/s/ William D. Nefzger
William D. Nefzger
BAHE COOK CANTLEY & NEFZGER PLC
The BCCN Building
1041 Goss Avenue
Louisville, Kentucky 40217
will@bccnlaw.com
(502) 587-2002 – Telephone
(502) 587-2006 – Facsimile
*Co-Counsel for Plaintiffs*

Amos N. Jones
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
jones@amosjoneslawfirm.com
(202) 351-6187 – Telephone
*Co-Counsel for Plaintiffs (pending* pro hac
vice *admission)*

/s/ William L. Davis
William L. Davis
108 Pasadena Drive, Suite 200
Lexington, Kentucky 40503
(859) 260-1997 (Office)
(859) 260-1310 (Fax)
wmldavis@hotmail.com
*Co-Counsel for Plaintiffs*

15641D69-8D46-4E45-8A33-87BA934517B5B : 000036 of 000072

AMC : 000036 of 000037

15641D69-8D46-4E45-8A33-87BA934517SB : 000037 of 000072

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was sent via the AOC's electronic filing system, service of process pursuant to Kentucky statutory and/or procedural law and/or or electronically on this 29th day of December 2022 to the following:

Russell B. Morgan
Edmund S. Sauer
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
rmorgan@bradley.com
esauer@bradley.com
(615) 252-2311 – Telephone
(615) 252-6311 – Facsimile
*Counsel for Defendants MCP and Bobbett[1]*

Megan U'Sellis
FISHER & PHILLIPS LLP
220 West Main Street, Suite 1700
Louisville, Kentucky 40202
musellis@fisherphillips.com
(502) 561-3963 – Telephone
*Counsel for Defendants MCP and Bobbett*

Lorenzo H. Cash
By service of process.

                                        /s/ William D. Nefzger
                                        Counsel for Plaintiff

AMC : 000037 of 000037

---

[1] Even though none of the attorneys listed in the Certificate of Service have filed an Entry of Appearance, at a recent hearing in the federal court action, all of them indicated their representation of the listed Defendants.



**Commonwealth of Kentucky**

**Emily Ward Buzanis, Graves Circuit Clerk**

NOT ORIGINAL DOCUMENT
01/03/2023 10:06:03 AM
85355

**Case #:** 22-CI-00362          **Envelope #:** 5419957

**Received From:** NEFZGER, WILLIAM D.          **Account Of:** NEFZGER, WILLIAM D.

**Case Title:** ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A...          **Confirmation Number:** 154781687

**Filed On** 12/29/2022   12:31:44PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Money Collected For Others(Postage) | $17.44 |
| 2 | Charges For Services(Copy - Photocopy) | $7.10 |
| | **TOTAL:** | $24.54 |

Generated: 12/29/2022



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | | NOT ORIGINAL DOCUMENT<br>01/03/2023 | Case #: **22-CI-00362** |
|---|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov* | | | 85365 | Court: **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | | | | County: **GRAVES** |

## CIVIL SUMMONS

*Plantiff,* **ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A**, *Defendant*

TO:  **LORENZO H. CASH**

   **400 S. 16TH STREET**

   **MURRAY, KY 42071**

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Emily Ward Buzanis*

Graves Circuit Clerk
Date: **12/29/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20_____      _____

                  Served By

                  _____

                  Title

Summons ID: @00000097498
CIRCUIT: 22-CI-00362 Certified Mail
ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A

Page 1 of 1



eFiled



| AOC-E-105 Sum Code: CI | | |
|---|---|---|
| Rev. 9-14 | | |

NOT ORIGINAL DOCUMENT
01/05/2022

853.65

Case #: 22-CI-00362

Court: **CIRCUIT**

County: **GRAVES**

**Commonwealth of Kentucky**
Court of Justice    *Courts.ky.gov*

CR 4.02; Cr Official Form 1

# CIVIL SUMMONS

*Plantiff,* **ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A**, *Defendant*


### TO:  MARCO SANCHEZ


The Commonwealth of Kentucky to Defendant:


You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.


*Emily Ward Burani*

Graves Circuit Clerk
Date: **12/29/2022**


---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 _____

_____
Served By

_____
Title

CI : 000001 of 000001

---

Summons ID: @00000097497
CIRCUIT: 22-CI-00362 Return to Filer for Service
ALIFF, DUSTIN ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC ET A



Page 1 of 1

eFiled