# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

| | |
|---|---|
| **DUSTIN ALIFF, ET AL.** | **PLAINTIFFS** |
| v. | **No. 5:23-cv-5-BJB** |
| **MAYFIELD CONSUMER PRODUCTS, LLC, ET AL.** | **DEFENDANTS** |

..................................................

| | |
|---|---|
| **ALONZO DANIEL, ET AL.** | **PLAINTIFFS** |
| v. | **No. 5:23-cv-18-BJB** |
| **MAYFIELD CONSUMER PRODUCTS, LLC, ET AL.** | **DEFENDANTS** |

\* \* \* \* \*

## OPINION & ORDER

A tornado destroyed a candle factory in Mayfield, Kentucky, killing several people and injuring many others. Several lawsuits followed, including the two discussed together in this opinion. In one, Dustin Aliff and a group of fellow employees working at the factory when the tornado hit filed suit together (or their estates did). These Aliff Plaintiffs sued their employer, Mayfield Consumer Products, and two MCP supervisors, Justin Bobbett and Lorenzo Cash. Those same parties are defendants in the other case as well, brought by the Daniel Plaintiffs: the administrator of the estate of Robert Daniel—a deceased jailer who oversaw inmates employed by MCP through a work-release program—and the next of friend of Robert Daniel's daughter. Although the specific claims vary, both the Aliff and Daniel Plaintiffs allege that MCP and the Supervisor Defendants committed several common-law torts and violated a host of Kentucky statutes when, notwithstanding knowledge of the approaching tornado, they threatened MCP's employees with termination if they left work early due to the storm.

MCP removed both cases to federal court despite acknowledging the lack of complete diversity of citizenship on the face of the complaints. Rather, because each set of Plaintiffs "fraudulently joined" the Supervisor Defendants "for the purpose of defeating diversity jurisdiction," MCP contended the "true" parties were diverse. *See* Aliff Action Notice of Removal (5:23-cv-5, DN 1) at 5–9; Daniel Action Notice of Removal (5:23-cv-18, DN 1) at 4–7. The claims against the Supervisor Defendants,

1

says MCP, are not even "colorable" because the exclusive-remedy provision of the Kentucky Workers' Compensation Act bars them.

That may be right. But if it is, then the Plaintiffs' claims against MCP would *also* fail for the same reasons. As MCP puts it, "MCP's immunity necessarily extends to its employees: the Supervisor Defendants." Response to Aliff Remand Motion (DN 29) at 7–8. Because KWCA exclusivity is a "common defense," therefore, the Court may not cleave off doubtful claims against non-diverse defendants and leave only similarly doubtful claims against diverse ones. That leaves the Court with a dispute between non-diverse parties over non-federal claims. So the Court must remand these cases to state court for lack of subject-matter jurisdiction.

## I. The Plaintiffs' Allegations

### A. Aliff Litigation

The allegations in the Aliff Plaintiffs' complaint—which at this stage the Court must accept as true—are similar to those discussed in a parallel decision. *See Starks v. Mayfield Consumer Products*, No. 5:22-cv-185 (DN 33). Aliff alleges that MCP "required" him and other employees "to continue to work" at the factory "even though it knew or should have known about the expected tornado and the danger of serious bodily injuries and death to its employees" posed by the tornado. Aliff Amended Complaint (DN 1-2) ¶ 31. In other words, MCP (through Bobbett and Cash) "refused to allow" the employees "to leave work before the tornado actually struck" the candle factory—"even though it had at least three hours of notice" of the dangerous tornado. ¶¶ 33, 38–46. "MCP," Aliff asserts, "repeatedly threatened to terminate the employment of any employee" who left work early due to the tornado. ¶ 34. MCP also allegedly "had a history of workplace safety violations." ¶ 26.

Aliff claims that MCP's, Bobbett's, and Cash's actions the night of the tornado constituted false imprisonment and intentional infliction of emotional distress. Those actions, according to the complaint, also violated numerous Kentucky statutes—such as first-degree assault, Ky. Rev. Stat. § 508.010(1)(b), first-degree wanton endangerment, § 508.060(1), and unlawful imprisonment, § 509.030(1). *See generally* Aliff Amended Complaint ¶¶ 111, 120–21, 134, 136, 138.

### B. Daniel Litigation

Robert Daniel, like the Aliff Plaintiffs, was stationed at the candle factory when the tornado hit. *See* Daniel Amended Complaint (DN 1-1) ¶ 30. But he wasn't making candles. Rather, he oversaw the work of inmates who did so—through an prison work-release program. ¶ 28. Daniel's actual employer was the Graves County Restricted Custody Center, "part of the Graves County Jail system." ¶¶ 20, 28. MCP employed inmates from the Restricted Custody Center. ¶ 24. Daniel transported them to and from the candle factory and "remained at the factory" while they were working, "as was customary in his role." ¶¶ 28, 30.

The night of the tornado, MCP allegedly "required inmates from the Restricted Custody Center" to continue working and (like the other employees) "refused to

2

dismiss" them, even though it "knew or should have known about the expected tornado" and its danger. ¶ 31, 33. Bobbett and Cash, according to the complaint, "knew of the severity of the risk posed by the weather," but "chose not to dismiss all employees and other people at the factory, which denied them the ability to seek and take safe shelter." ¶¶ 34, 38. Daniel tragically died after the tornado struck the factory. ¶ 57.

The Daniel Plaintiffs then filed several claims against MCP, Bobbett, and Cash based on their actions as the tornado approached: negligence, IIED, and violating numerous Kentucky statutes, including reckless homicide, § 507.050, and second-degree manslaughter, § 507.040(1). *See generally* Daniel Amended Complaint ¶¶ 96–104. They also allege that MCP engaged in negligent hiring, training, retention and/or supervision of its employees, including Bobbett and Cash. ¶ 69.

## II. The Court's Jurisdiction

### A. The Aliff Plaintiffs didn't fraudulently join the Supervisor Defendants

MCP admits that the Bobbett and Cash are "non-diverse" and that the parties in the Aliff case lack complete diversity. *See* Response to Aliff Remand at 1. It argues, however, that the Aliff Plaintiffs fraudulently joined the Supervisor Defendants to evade this Court's jurisdiction. *Id.* at 5.

The Sixth Circuit "has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The arguably mistitled doctrine has little to do with fraud in the familiar sense, however: "the plaintiff's motive for suing the non-diverse defendant is irrelevant." *Probus v. Charter Communications, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007). Rather, the jurisdictional doctrine looks to the merits of the claim, not the motivation of the claimant: "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493. If, however, "there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court." *Id.*

Do the Aliff Plaintiffs have a "colorable basis for the state-law claims against Bobbett and Cash"? Response to Aliff Remand Motion at 5. No, says MCP, because these legal claims are barred by the Kentucky Workers Compensation Act, which cloaks participating employers with "immunity for liability arising from common law and statutory claims" based on a "work-related injury." *Kentucky Employers Mutual Insurance v. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007) (quotations omitted). The "claims against the Supervisor Defendants, both of whom are MCP employees, seek compensation for work-related injuries," triggering (in MCP's eyes, anyway) the KWCA exclusive-remedy provision. Response to Aliff Remand Motion at 6. So if an "employer secures payment of compensation as required" under the Act, "the liability of such employer under this chapter shall be exclusive and in place of all other

liability of such employer to the employee." Ky. Rev. Stat. § 342.690(1). That exemption from liability, moreover, extends to "all employees, officers or directors of such employer." *Id.*

MCP's argument that the KWCA bars Aliff's claims against the Supervisor Defendants is strong. The Aliff Plaintiffs' claims, the argument goes, plainly arise out of work-related injuries. No one doubts MCP has secured workers' compensation coverage. *See generally Starks*, No. 5:22-cv-185 (DN 33) (agreeing with this position and granting judgment on that basis). So here, too, MCP raises the KWCA as a shield that covers its supervisors. *See, e.g.*, Aliff Action Notice of Removal at 7; Response to Aliff Remand Motion (DN 29) at 6–8. The Aliff Plaintiffs offer little by way of response on the merits—asserting only that in state court their claims "*could* be successful," largely for reasons the Court already rejected in parallel litigation, *see Starks*, No. 5:22-cv-185 (DN 33). Aliff Reply in Support of Remand Motion (DN 33) at 3.

But MCP faces a different problem: the same shield it raises to protect the Supervisor Defendants would also cover MCP itself. Which means that dismissing the non-diverse parties would effectively resolve the arguments of the diverse parties as well—and therefore "ste[p] from the threshold jurisdictional issue into a decision on the merits." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). Rather than exceed its jurisdiction in that manner, the Court must remand this case to state court.

At least four circuits have recognized this so-called "common defense rule," rooted in the Supreme Court's decision in *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 153 (1914).[1] "When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant"—precisely as with the Supervisor Defendants here—"and that showing is equally dispositive of all defendants rather than to the in-state defendants alone,"— as with MCP—"the requisite showing" to establish fraudulent joinder "has not been made." *Smith v. SmithKline Beecham Corp.*, No. 7:11-cv-56, 2011 WL 2731262, at *4 (E.D. Ky. July 13, 2011) (second alteration in original) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc)). In other words, if "the plaintiff has no hope of prevailing against *any* of the defendants because they all share a common defense, there is nothing wrong with the joinder of the non-diverse defendant; rather, the problem is with the plaintiff's entire case." *Id.* at *5.

---

[1] *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004); *Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011); *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 113 (3d Cir. 1990). The Sixth Circuit hasn't yet addressed the common-defense rule, but several district courts in the Circuit have followed it. *See, e.g.*, *Smith v. SmithKline Beecham Corp.*, No. 7:11-cv-56, 2011 WL 2731262, at *4 (E.D. Ky. July 13, 2011); *Fee v. Chesapeake Appalachia, LLC*, No. 7:13-cv-96, 2014 WL 2769119, at *2 (E.D. Ky. June 18, 2014); *MA Equip. Leasing I LLC v. Tilton*, No. 2:09-cv-880, 2010 WL 11538520, at *6 (S.D. Ohio Aug. 19, 2010).

MCP's argument that the Aliff Plaintiffs fraudulently joined the Supervisor Defendants (KWCA exclusivity, *see* Response to Aliff Remand Motion at 7–8) is identical to its argument why the Aliff Plaintiffs fail to state a claim against MCP (KWCA exclusivity, *see id.*). MCP frankly admits as much: "MCP's immunity necessarily extends to its employees: the Supervisor Defendants." *Id.* Applying the common-defense rule here is simple: "because [MCP's] argument for why [Aliff's] claims against [the Supervisor Defendants] must fail is 'equally dispositive of all defendants,' it cannot suffice to establish fraudulent joinder." *SmithKline Beecham Corp.*, 2011 WL 2731262, at * 6 (quoting *Smallwood*, 385 F.3d at 575); *see also McNary v. Cottrell, Inc.*, No. 09-cv-0640, 2009 WL 5066650, at *4 (S.D. Ill. Dec. 17, 2009) (workers' compensation was a common defense).

MCP fails to meaningfully distinguish this case from the decisions described above. The common-defense rule doesn't apply, its supplemental brief contends, because MCP isn't "asking the Court to pierce the pleadings to adjudicate the merits of the claims against the non-diverse Supervisor Defendants." MCP Aliff Action Supplemental Brief (DN 50) at 4. Why that would matter is far from obvious—and MCP's brief doesn't explain why. "Piercing the pleadings" in this context refers to a procedural device that allows courts to consider evidence in determining whether the plaintiff has a colorable claim against a non-diverse defendant. *See, e.g.*, *SmithKline Beecham Corp.*, 2011 WL 2731262, at *3. Whether the Court examines evidence or merely pleadings appears to have no bearing on whether the common-defense rule comes into play; the question is whether the analysis is the same, not whether the analysis is legal or factual. The fraudulent-joinder argument would dispose of both the diverse and non-diverse defendants on the pleadings—and no one has asked the Court to examine any factual material that might alter that analysis. And dismissing on those grounds is exactly what MCP has advocated throughout this litigation: that KWCA exclusivity bars all the Aliff Plaintiff's claims against both MCP and the Supervisor Defendants. *See* Response to Aliff Remand Motion at 7–8.

Because the common-defense rule applies, MCP's fraudulent-joinder argument fails. So the Supervisor Defendants—who admittedly aren't diverse from the Aliff Plaintiffs—remain in the case. Given their involvement, the Court lacks subject-matter jurisdiction over this case and remands it to state court.

### B. The Daniel Plaintiffs Didn't Fraudulently Join the Supervisor Defendants

As in the Aliff case, MCP acknowledges that the Daniel Plaintiffs lack complete diversity: "On its face, this action was not removable to federal court given the existence of the two non-diverse Supervisor Defendants." Motion to Dismiss Daniel Action (DN 9) at 3. But MCP again contends that the Daniel Plaintiffs fraudulently joined the Supervisor Defendants to avoid the Court's jurisdiction and prevent MCP

5

from "exercising its constitutional right of removal." Response to Daniel Remand Motion (DN 31) at 1.[2]

The Daniel Plaintiffs claim that MCP negligently hired and supervised its employees (including Bobbett and Cash); that MCP and those supervisors negligently failed to dismiss its employees (including those in the work-release program) before the tornado hit; and that all the Defendants intentionally inflicted emotional distress and violated numerous Kentucky statutes. *See, e.g.*, Daniel Amended Complaint ¶¶ 54–57, 66, 69, 80, 85, 94–104. Those claims, according to MCP, turn on whether MCP and the Supervisor Defendants possess "up-the-ladder KWCA immunity." MCP Response to Daniel Remand Motion (DN 31) at 6.

May MCP and its employees maintain the KWCA exclusivity defense even though Daniel worked for the jail rather than the factory? Potentially: KWCA exclusivity "can extend 'up the ladder' from a worker's immediate employer to reach the contractor that hired that employer." *Houser v. Kohl's Inc.*, No. 5:22-cv-108, 2023 WL 1072008, at *2 (W.D. Ky. Jan. 27, 2023). The term "employer" includes a "contractor" under the Act, § 342.690(1), which defines a "contractor" as "a person who contracts with another" (a "subcontractor") to "have worked performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person," § 342.610(2)(b). The KWCA bars not only claims made by the worker, but also "his legal representative," "next of kin," and "anyone otherwise entitled to recover damages." § 342.690(1).

MCP argues "up the ladder immunity" renders the claims not colorable because the KWCA applies "regardless of the fact that Robert Daniel was working indirectly with MCP under a contract with the Department of Corrections." Motion to Dismiss Daniel Action at 8. Nor does MCP believe it matters, given the Act's extensive reach, "that claims are brought on behalf of his estate and through his next of kin." *Id.* It contends "MCP is a 'contractor' entitled to up-the-ladder KWCA immunity— immunity that indubitably extends to the Supervisor Defendants." Reply in Support of Motion to Dismiss Daniel Case (DN 13) at 5.

MCP's fraudulent-joinder argument again implicates the common-defense rule. On MCP's theory, if MCP is a "contractor" within the meaning of the KWCA,

---

[2] MCP appears to misunderstand the source of federal subject-matter jurisdiction. The supplemental brief asserts that MCP has a "constitutional right to a federal forum established by Article III, Section 2, Clause 1 of the United States Constitution." DN 30 (5:23-cv-18) at 5. But as the learned defense counsel surely understand, Article III does not "establis[h]" federal courts or provide an independent constitutional right for parties (whether diverse or not) to have their case resolved by such a court. Rather, Article III gives *Congress* the authority to, at its discretion, "ordain and establish" inferior federal courts and enact a *statute*—say, 28 U.S.C. § 1332—setting the limits of the federal jurisdiction of those inferior courts. *See e.g.*, *Palmore v. United States*, 411 U.S. 389, 400–01 (1973). "Courts created by statute," the Supreme Court explained long ago, "can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. 441, 449 (1850); *see also* Bradford R. Clark, *Separation of Powers as a Safeguard of Federalism*, 79 TEX. L. REV. 1321, 1404 (2001).

both it and the Supervisor Defendants are immune from liability. If true, that determination would "'effectively decid[e] the entire case'" and "accordingly should have been brought in the context of attacking the merits" of the Daniel Plaintiffs' case, "rather than as a basis for removing the case to federal court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (quoting *Smallwood*, 385 F.3d at 571). That the Daniel Plaintiffs "asserted certain allegations against [MCP] which were not asserted against the non-diverse employees" is immaterial "because the dispositive defense"—KWCA up-the-ladder immunity—"was raised by all three defendants." *Boyer*, 913 F.2d at 113. In other words, the identity of the defense—not the claims—is what matters. And according to MCP that defense (if correct) would equally absolve all three Defendants of all liability. *See* Reply in Support of Motion to Dismiss Daniel Case at 5; MJOP Daniel Case (DN 17) at 13, 15.

In any event, even if the common-defense rule didn't require remanding this case to state court, MCP hasn't shown that the Daniel Plaintiffs' claims "clear[ly]" fail under Kentucky law. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432–33 (6th Cir. 2012). Was MCP was a "contractor" within the meaning of the Act? The answer is less clear—and more factually contingent—than MCP suggests. Was the Graves County Restricted Custody Center "hired to perform the work in question"? *Houser*, 2023 WL 1072008, at *2. Was the work of a deputy jailer at MCP a "'customary, usual or normal' part" of MCP's "business or work that [it] repeats with some degree of regularity"? *Id.* (alteration in original) (quoting *Black v. Dixie Consumer Products LLC*, 835 F.3d 578, 585 (6th Cir. 2016)). And was this work "something 'that [the contractor] or similar businesses would normally perform or be expected to perform with employees'"? *Id.* (alteration in original) (quoting *Black*, 835 F.3d at 585). Absent any precedential or statutory support, the Court cannot answer as a matter of law.

Nor is the answer clear based on the record before the Court. These questions are disputed factual ones that the Court may not resolve at this stage of the case. The pleadings don't reveal whether this or other candle manufacturers "customarily" host jailers overseeing work-release inmates. Nor do they establish that the work Robert Daniel performed at MCP's candle factory—"oversee[ing] the work release program and the inmates involved" and "transport[ing] the inmates" to MCP's factory, *see* Daniel Amended Complaint ¶¶ 28, 30—mirrored the "customary" work that MCP employees perform and repeat with regularity. Supervising prison inmates isn't the first thing that pops to mind when thinking about the customary work of candlemakers. Perhaps Robert Daniel did perform customary work, but that's not clear enough to render the Plaintiffs' responses to the KWCA exclusivity defense not even colorable. Indeed, MCP has made abundantly clear that it hasn't sought to "pierce the pleadings" and "consider mountains of evidence." MCP Daniel Action Supplemental Brief (DN 30) at 3. And without such evidence, MCP hasn't met its "particularly heavy burden" to "prove fraudulent joinder." *Kent State University Bd. of Trustees v. Lexington Insurance Co.*, 512 F. App'x 485, 489 (6th Cir. 2013). In addition to MCP's and the Supervisor Defendant's KWCA exclusivity defense, moreover, several other failure-to-state-a-claim arguments (particularly with respect to negligence) turn on unresolved factual issues as well. *See, e.g.*, Motion to Dismiss

Daniel Case at 13–14 (citing disputed facts in arguing that the Supervisor Defendants didn't breach the standard of care). So the Daniel Plaintiffs have alleged claims that are at least "colorable" at this stage (even if they ultimately prove unsuccessful at a later point). MCP's fraudulent-joinder argument therefore fails, and the Court must remand this action to state court for lack of subject-matter jurisdiction.[3]

### ORDER

The Court remands these cases to state court for lack of subject-matter jurisdiction.

Benjamin Beaton, District Judge
United States District Court

July 31, 2023

---

[3] As an alternative to its fraudulent-joinder argument, MCP asks the Court to sever the claims against the non-diverse Supervisor Defendants. *See* MCP Daniel Action Supplemental Brief at 5; MCP Aliff Action Supplemental Brief at 6. Courts may sever any dispensable party under Federal Rule of Civil Procedure 21. *See, e.g., Johnson v. Bartley*, No. 15-cv-56-ART, 2015 WL 5612251, at *2 (E.D. Ky. Sept. 21, 2015). But that "authority … should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989). And the Court declines to exercise it under these circumstances.

Severance here would prejudice the Plaintiffs in both cases, as they might have to litigate nearly identical claims in different forums, possibly leading to inconsistent verdicts. *See Johnson*, 2015 WL 5612251, at *2. And it would also "wast[e] judicial resources," as two different courts would have to resolve motions with overlapping legal and factual issues. *Id.* MCP again points to its purported "right to a federal forum established by the United States Constitution" as a reason why the "interests of justice" support severance. MCP Daniel Action Supplemental Brief at 6. But MCP has no such constitutional right, *see* above at n.2, and any statutory right wouldn't apply here to parties that are not completely diverse, *see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

8